# Smull *against* Jones.[*]

In an action of ejectment by the heirs-at-law of an insolvent debtor, the executor of a deceased creditor is not a competent juror, and may be challenged for that cause.

In an action of ejectment where the plaintiff's right to recover is founded upon an allegation of fraud in a sheriff's sale of the property as the estate of the plaintiff, all the proceedings by which the sale was made and the exceptions to it and confirmation of it by the court are competent evidence. .

If a witness be erroneously rejected by the court, the error is cured by the party's subsequently withdrawing his objection to his competency and agreeing to his examination.

. There is nothing illegal in two or more persons agreeing together to purchase a property at sheriff's sale, and fixing a certain price which they are willing to give and appointing one of their number to be the bidder.

ERROR to the Common Pleas of *Dauphin* county.

This was an action of ejectment by John Smull against A. J. Jones, Theo. Fenn, and the Harrisburg Savings Institution, to recover a house and lot in Harrisburg. During the pendency of the suit, John Smull died, and his heirs-at-law were substituted. The plaintiffs' claim was founded upon an allegation of fraud on the part of the defendants and John Snevily in purchasing the property at sheriff's sale as that of the plaintiffs. The facts of the case are sufficiently stated in the opinion of this Court.

*Rawn* and *Fisher*, for the plaintiffs in error.
*M'Cormick*, for the defendants in error.

The opinion of the Court was delivered by

KENNEDY, J. — The first error assigned is an exception to the opinion of the court below in allowing a challenge of William Watson as a juror, who was selected and called as such to try the cause; because it appeared by his own statement that he was the executor and son-in-law of Abraham Oves deceased, to whom John Smull, the ancestor of the plaintiffs, died indebted; and, as it was further alleged, that the said Smull's estate was insolvent, and the land in question in this action, if recovered, would be a fund that must be applied towards the payment of Smull's debts, which would enable Watson to obtain part of the debt, if not all of it, coming to the estate of his testator. It was certainly very natural to suppose that Mr Watson felt some interest in recovering the debt, which it was his duty to collect, as executor, if practicable, and therefore could not be considered as altogether free

---

[*] This and the following case were argued at May term 1843.

[Smull v. Jones.]

from bias in regard to the event of the issue between the parties here. The question, whether Mr Watson was a fit person to serve as a juror, seems to have been submitted to the decision of the court, as triers were not asked to be appointed; and we cannot say that the court decided incorrectly.

The second error assigned includes the 2d, 3d, 4th, 5th and 6th bills of exception to the admission of evidence, and the rejection of John Snevily as a witness. The second bill of exception was to the admission of the return made by the sheriff to the writ of *venditioni exponas*, under which he had sold the property in question to the defendants, and to show also that the money arising from said sale had been brought into court and distributed among the lien creditors of the said John Smull. There was certainly nothing wrong in showing the return of the sale by the sheriff of the property to the defendant. This was rather necessary; and to show that the money arising from the sale so made had been applied to the use of Smull, in paying his debts, could do no harm to the plaintiffs. We therefore think that there is nothing in this bill of exception to justify a reversal of the judgment.

The third bill of exception was taken to an offer on the part of the defendants to show by the records of the court that Smull himself, who was living at the time, obtained a rule, upon exceptions filed in court by him, of the same import as those made now by his heir, the plaintiff, to the sale, to show cause why the sale should not be set aside, and that after a full hearing of the parties, the court discharged the rule, and directed the sale to be perfected by the sheriff. Now although what was done in the court, in this respect, immediately after the sale, may not have been conclusive to establish the validity of it, yet it was the decision of a tribunal that had cognizance of the subject-matter, and being between the defendants and the ancestor of the plaintiffs, from whom they derive their claim to the property, it was not only admissible but pretty strong evidence to support the sale. This bill of exception cannot, therefore, be sustained.

The fourth bill of exception is to the rejection of John Snevily as a witness for the plaintiff. The court conceiving him, from what had been shown, to be interested in favour of a recovery by the plaintiffs, therefore held him incompetent. Although we think that the court was mistaken in considering Snevily interested in the event of this cause, by reason of the promise of Smull to pay him all he owed him at the time he released Smull in consideration of $400 received of him, because the promise was without consideration and not binding in law, yet we are decidedly of opinion that the error of the court in this particular was cured by the counsel of the defendants subsequently, in the course of the trial, withdrawing their objection to Snevily's being admitted as a witness to testify on the behalf of the plaintiffs. This left the counsel of the plaintiffs at liberty to examine Snevily and have his

testimony if they pleased; but if they, as it appears they did, voluntarily declined examining him, it cannot be said that they have any right to complain of being injured. *Volenti non fit injuria* is the maxim of law in such cases. This exception, therefore, goes for nothing.

The fifth exception is to the opinion of the court, in permitting the defendants' counsel to ask Ackerson Martin, a witness on the stand, whether he would have bid for the property in dispute at the sheriff's sale of it, if he had been present; to which he answered that he would not, and that he was not kept away from anything that transpired that day. This was objected to as not being relevant to the issue. But this does not seem to be clearly so, for it repelled the inference that the plaintiffs' counsel might otherwise have attempted to draw from other parts of his evidence relative to what passed between him and some of the defendants anterior to the sheriff's sale. This exception, therefore, is not sustained.

The sixth bill of exception is to the opinion of the court in admitting P. C. Sedwick, a witness in the cause, to answer the question put by the counsel of the defendants, whether Fenn, one of the purchasers of the property in question at the sheriff's sale, was, at the time, on speaking terms with Snevily, and had not had a personal difference with him. We cannot say but an answer to this question might properly enough have been entitled to some weight, in determining whether Fenn was likely to be concerned with Snevily, as was alleged on the part of the plaintiffs.

The third error assigned consists of bills of exception to the opinion of the court in rejecting the evidence offered by the plaintiffs in the seventh and eighth bills of exception; and in admitting the evidence offered by the defendant as specified in the ninth, tenth and eleventh bills of exception.

The offer by the plaintiffs, as contained in the seventh bill of exceptions, was to give evidence of the declarations of John Snevily, made on the 6th of April 1840, and repeatedly previously to that date, with respect to the arrangement entered into by and between A. J. Jones, Theophilus Fenn, Ackerson Martin and himself, relative to the purchase of the property in controversy at the sheriff's sale, and the mode and manner in which the parties were to conduct themselves at that sale, and procure the same to be struck down to one of them for the others, for the purpose of establishing that a combination was entered into for the purpose of depressing the price of the property by artifice, and for the purpose of showing that they were to bid this property to $16,000, if any person bid against them, and if not, to get it as low as they possibly could, but to consider the same as sold at $16,000, so as to pay their own judgments to the exclusion of intermediate judgments; and that Andrew J. Jones, up to the 6th of April 1840, uniformly denied that John Snevily had any interest in the pro-

perty, or that he had ever executed any paper showing that Snevily had any interest in said purchase or property.   Now, waiving the objection to this offer, that the declarations made by Snevily on the 6th of April 1840 were made on the trial of an ejectment which he had instituted against Andrew J. Jones, to recover a portion of the property in dispute by virtue of an agreement which he alleged he had made with Jones anterior to the purchase at the sheriff's sale, which declarations were all denied by Jones at the time, and therefore may be said to be of no avail as evidence, because the denial of the one was as good as the assertion of the other, and removed all ground for making them evidence as against Jones, the defendant in this case, it is very clear that any and every declaration which Snevily might choose to make "relative to the purchase of the property in controversy at the sheriff's sale, and the mode and manner in which the parties were to conduct themselves at that sale, and procure the same to be struck down to one of them for the others," might not be pertinent to the issue joined in the cause, or have the least effect whatever on the validity of the sale; and unless they were such as tended to show that the purchase at the sheriff's sale was unfairly obtained by Jones, the defendant, it is equally clear that they were inadmissible, and after being objected to by the counsel for the defendants, it was incumbent on the counsel for the plaintiffs to specify particularly to the court the purport of the declarations offered to be given in evidence, that the court might judge of their tendency to establish anything material to the issue; but not having done this, we think that the court decided correctly in rejecting them.

The eighth bill of exception was taken to the opinion of the court in rejecting a second offer, on the part of the plaintiffs, to give the declarations of Snevily, made on the 6th of April 1840, on the trial of the ejectment brought by him against Jones, as mentioned before, without specifying the purport of the declarations so offered to be given in evidence, so as to enable the court to judge of their relevancy to the issue trying.   The counsel for the defendants having objected to the declarations of John Snevily, whatever they might be, though having relation to the sheriff's sale of the property, being given in evidence, the court acted correctly in rejecting them, as the plaintiffs' counsel did not specify the purport of them particularly ; so that the court might determine whether they were such as might tend to prove anything pertinent to the issue.

The ninth bill of exception was to the admission of evidence, offered by the defendants to show that the property in question was sold at the sheriff's sale to the defendant for a full price, if not more than it was worth.   The pertinency and bearing of this evidence on the great question attempted to be raised by the plaintiffs in the cause, was very apparent, as it went to show that the defendant could not have done anything in regard to his pur-

[Smull v. Jones.]

chase of the property, that prejudiced either John Smull or his creditors, who were the only persons that were interested in having the sale conducted in such a manner as would obtain for the property a price at least fully equal to its value. The fact of its having been sold and bought at such a price, if established, was powerful evidence to show that the purchase and sale had been fairly made; and therefore the evidence complained of in this bill was properly admitted.

The evidence mentioned in the tenth bill of exceptions, and admitted by the court after being objected to by the plaintiffs' counsel, may possibly, under one aspect of the case, have been entitled to some weight with the jury, in order to show that nothing but what was perfectly fair and lawful was intended by the defendant, Jones, in uniting himself with others for the purpose of buying the property in question at the sheriff's sale.

The evidence mentioned in the eleventh bill of exceptions, and received by the court, tended to repel pretty strongly any design on the part of Jones to injure Smull by his becoming a purchaser at the sheriff's sale, by his offering to give up the purchase to Smull or to any friend that he would get to pay the amount of the purchase money. We therefore think it was admissible.

The fourth and remaining errors assigned are exceptions to the charge of the court to the jury. They are of the same nature and character, and consist of exceptions to some remarks made by the court to the jury in regard to the connexion which John Snevily might have had in the purchase of the property, and likewise on the evidence, which, as contended for by the counsel of the plaintiffs, tended to prove a fraudulent combination, on the part of Jones and others, to depress the value of the property as much as possible at the sheriff's sale, and thus injure Smull and his creditors. We are satisfied that the plaintiffs have no reason whatever to complain of the charge delivered by the court to the jury. For it appears throughout to be quite as favourable, and indeed more so, than they had any right to require. For the court, among other things, told the jury that "if it was agreed between Snevily and Jones that their respective judgments should be paid as though the property had brought at sheriff's sale $16,000, and that Jones alone should bid at the sale, in order to get it as much under the $16,000 as possible, such agreement was fraudulent; and if they were satisfied of its existence from the testimony, the sale to Jones was void." This direction to the jury, as we conceive, was incorrect in point of law, and much more favourable to the plaintiffs than it ought to have been. The court, on the contrary, ought to have told the jury that such an agreement was perfectly lawful, and therefore would not avoid the sale. It would be repugnant to every principle of common sense, reason and law, to say that two or more, and especially judgment or lien creditors of a debtor, whose real estate had been taken in execution and was about to

[Smull v. Jones.]

be sold by the sheriff, could not agree to become joint purchasers thereof, provided it were not bid for by others beyond a fixed sum, and that one of them should bid in his own name for the common use of all of them. But it is said such agreement, in its effect, prevents competition, and therefore inevitably tends to depress the price for which the property would otherwise be sold, to the injury of the debtor and the other creditors. Admitting this to be true in part, which is all that can be claimed, at most, what right has the debtor, or have the other creditors, to demand and require that there shall be a competition, either among the creditors of the debtor or among those who are not of his creditors? It would require even more than a casuist to demonstrate that they or any of them have such right. Every man must be left to act as he pleases in such case; that is, either to bid singly for the property, if he wishes to buy, and be able, or to unite with others, as he may think it most suitable to his means, and most advantageous to himself in any other respects. But it is far from being true that every agreement of the kind has a necessary tendency to lessen the price that otherwise might be obtained for the property at the sale; on the contrary, it may tend to increase it. For instance, where there are a number of lien creditors who singly have not the ability to buy, but by uniting their means they are enabled to do so, and thus not only create a competition that could not otherwise exist, and for the purpose of securing the payment of their claims ultimately by a re-sale of the property, may be induced to give more for it at the sheriff's sale than any other person or persons are willing to do. The truth of this illustration must strike the mind of every one in the least degree conversant with the ordinary transactions of life, and goes to show that no principle of public policy can be set up or interposed, to interfere with or prevent men from acting upon such occasions according to their own will, and as their ability may enable them. Indeed, it appears to me, from all the evidence given in this case, taken in connection with that which was offered and rejected, so far as the nature and purport of it has been expressed and made known, that nothing like a conspiracy to defraud John Smull or any of his creditors was ever formed or intended. That an agreement relating to the purchase of the property in question at the sheriff's sale which was about to be made, was entered into by the defendant, Jones, and other creditors of John Smull, the owner of the property at the time, is very evident; but it is equally evident that the object of the agreement was that they might be enabled, by a union of their means, to go so far in bidding for the property as to make the price of it cover their claims, or otherwise buy it at such price as would enable them to have their claims paid possibly by a re-sale of it. And I also think that the result of the agreement was that the property was sold for a higher price than it would have been if such agreement had not been made.

Judgment affirmed.