Nov. Term, 1844.

BUNTS
v.
COLE.

---

BUNTS *v.* COLE and Another.

If a bidder at sheriff's sale of real estate prevent others from bidding, by representations respecting the object of his bid, and then buy the property at the sale at a price much below its value, the sale is void as against public policy, and as a fraud upon the judgment-debtor and his creditors.

If a defendant in chancery submit the cause on bill, answer, and depositions, the filing of a replication is waived.

ERROR to the *La Grange* Circuit Court.

SULLIVAN, J.—The bill in this case was filed by *Bunts*, the plaintiff in error, to set aside, as fraudulent, a sale of a tract of land made by the sheriff of *La Grange* county. The bill states that, by virtue of a judgment and execution in favour of one *M'Ilvaine* for the sum of about 50 dollars, a tract of land belonging to the complainant, of the value of 700 dollars, was sold by the sheriff of the county of *La Grange*, and purchased by *Francis F. Jewett*, at and for a sum barely sufficient to satisfy the judgment; that fraudulent means were resorted to by *Jewitt* to purchase the land at a price greatly below its real value ; that while the sale was progressing, he represented to persons who were bidding for the land, that the complainant had deserted his wife and children, leaving them in a destitute condition, and that he, as the agent of *Allen B. Cole*, a son of the complainant's wife by a former husband, wished to purchase the land for the benefit of complainant's family ; that by means of his representations, &c., persons were induced to refrain from bidding, &c. The bill

*Thursday, November* 28.

Nov. Term, further states, that *Jewitt* acted as the agent of *Cole* in mak-
1844.   ing said purchase, and that the purchase-money was furnish-

BUNTS   ed by *Cole*. *Jewitt* and *Cole* are made defendants to the bill.
v.
COLE.       *Cole*, in his answer, admits the sale of the land by the
sheriff, and the purchase of it by *Jewitt* as his agent. He
says that a short time before the land was sold, being then a
resident of *Hamilton* county, he visited his mother, the wife
of the complainant, in *La Grange* county ; that he found her
residing on said land, abandoned by her husband, and sup-
porting herself by her own labour ; that he thereupon deter-
mined to purchase the land, intending it for the use of his
mother and her children so long as they wished to live on it ;
that he employed his co-defendant, *Jewitt*, to purchase the land
for him, and furnished him with 54 dollars and 50 cents with
which to make the purchase. He admits that the sheriff con-
veyed the land to *Jewitt*, and that *Jewitt* has since conveyed
it to him.

The answer of *Jewitt* admits the purchase of the land at
the sheriff's sale by the respondent, as the agent of *Cole*, for
the sum of 54 dollars. It denies that the respondent made
any false representations to prevent others from bidding for
the land, but admits that he did, at and pending the sale,
make it known to some persons that he was bidding for the
land, not for himself but for his co-defendant *Cole*, whose ob-
ject was to purchase it as a home for his mother. The re-
spondent admits that, while the sale was progressing, a stran-
ger who was present offered a bid for the land, or talked
about doing it, but when he was informed that respondent
was acting as the agent of *Cole*, he declined bidding. He
admits that he received a deed for the land from the sheriff,
and says he has conveyed to *Cole*.

No replications to the answers were filed ; depositions
were taken ; and at the final hearing on bill, answers, and
depositions, the Court dismissed the bill.

*Frederick Hamilton* swore, that he was the sheriff of *La
Grange* county at the time the land was sold, and that the
sale was conducted by himself in person ; that there were
several persons at the sale, but that no one bid except *Jewitt*
and another man who was a stranger to the witness ; that
when the stranger bid for the land, *Jewitt* took him aside, they

shortly returned, and the stranger then withdrew his bid and would not bid again; that before he was taken away by *Jewitt*, he appeared to be anxious to bid; that witness described the land to him, and told him the title was good. The witness further says, that *Jewitt* told him that he was purchasing the land for the benefit of the wife and children of *Bunts*, on hearing which he, the witness, did not care how cheap the land sold, and so told the stranger.

*Jonathan Woodruff* swears, that he did not attend the sale and bid, because he was assured by *Jewitt*, that Mrs. *Bunts* would pay him a debt that her husband owed him; that he considered *Jewitt* to be responsible for the debt, and had it not been for what *Jewitt* and Mrs. *Bunts* said, and the arrangement made by them, he should have attended the sale and bid more than *Jewitt* did. He understood the object they had in view to be, that Mrs. *Bunts* might get the land as cheap as possible. He further states that neither *Jewitt* nor Mrs. *B.* paid him, but that *Bunts* himself paid the debt.

*James H. Holmes* testifies, that he did not attend the sale and bid for the land as he intended, because he was assured by *Jewitt*, that a debt that *Bunts* owed him should be paid; and, also, because he was told by *Jewitt* that the land was to be purchased for the use of Mrs. *Bunts* and her children.

Three witnesses swore that the land with the improvements was worth, at the time of the sale, 500 dollars.

The testimony very clearly proves that the conduct of *Jewitt*, however humane his motives were, prevented competition at the sale. Through his representations, the property of the complainant was sold at a great sacrifice. His appeals to the sympathies of the bystanders were well calculated to prevent them from bidding for the land. This was against public policy. The law provides, in various ways, for a fair competition in sales made by its authority, and whatever prevents it is a fraud on the sale. *Jones* v. *Caswell*, 3 Johns. Cas. 29. It is also a fraud on the debtor and his remaining creditors, by depriving the former of the opportunity of obtaining a full equivalent for the property, which is devoted to the payment of his debts. *Ib.* If underbidders or puffers are employed at an auction to enhance the price and deceive other bidders, and they are in fact misled, the sale will be

Nov. Term, 1844.

held void as against public policy. The reason is, that a fair competition is prevented. The parties do not meet on equal terms. The same equitable principle must prevail, where competition is prevented by any combination or trick, on the part of the bidders, to the serious injury of the debtor. *Doolin* v. *Ward*, 6 Johns. R. 194.—*Wilbur* v. *How*, 8 Johns. R. 444.

The omission to file a replication cannot, under the circumstances, be assigned for error. The defendant, having consented to submit the cause on bill, answers, and depositions, must be considered as having waived it. *Demaree et al.* v. *Driskill*, 3 Blackf. 115.

We are of opinion, that the sale referred to in the bill was a fraud on the complainant and must be set aside. The purchase was made by *Jewitt* as the agent of *Cole* and with his money. *Cole* is not an innocent purchaser; he is affected by the acts of his agent. He is, however, entitled to be refunded the purchase-money, which was applied to pay the complainant's debt.

*The Court* reversed the decree with costs, and decreed that the sheriff's sale was void, but that *Cole* should retain a lien on the land for the money paid by him, &c.

*J. B. Howe*, for the plaintiff.

*W. H. Coombs*, for the defendants.