PLASTER and Another *v.* BURGER.

Appeal from an order temporarily enjoining a suit in ejectment commenced by *A.* against *B.*, to recover land which had been sold on an execution against, and as the property of *B.*, to one *C.* It appeared that the property, when sold, was worth 1,000 dollars, and was purchased by *C.* for 200 dollars; that it was suffered to remain in *B.'s* possession for five years, as if no change of title had taken place, and was then sold, while still worth 1,000 dollars, by *C.* to *A.*, for 500 dollars, &c. It also appeared that bidding was prevented at the sheriff's sale by *C.'s* promises to *B.* and his creditors that the latter should be paid and *B.* allowed to redeem, &c. *Held,* that a case entitling *B.* to relief was shown, and that the order of injunction should be affirmed.

*Thursday, June 8.*

APPEAL from the *Hendricks* Circuit Court.

PERKINS, J.—Bill in chancery to set aside a deed, enjoin a suit at law, &c. Temporary injunction granted. Answers and depositions filed. Motion to dissolve overruled, and an appeal from that decision to this Court.

It appears by the record that divers judgments were rendered in the *Hendricks* Circuit Court against *Henry Burger*, which were liens upon the real estate owned by *Burger* and on which he resided; that an execution was taken out upon the oldest of said judgments, and the real estate offered for sale; that *Matlock* purchased it for 200 dollars in *January*, 1845; that he suffered *Burger* to remain in undisturbed possession till *May*, 1851, when said *Matlock* sold said real estate to *John Plaster* for 500 dollars; that *Plaster* has commenced an ejectment to recover the possession; that said lot, at the times *Matlock* purchased and sold it, was worth 1,000 dollars; that there was a good deal of unsettled business between *Matlock* and *Burger*, and that the latter was greatly involved, having little, probably, but the real estate in question, with which to pay his debts.

*Burger* alleges that the purchase by *Matlock* at sheriff's sale was for the benefit of him (*Burger*), and that the subsequent sale to *Plaster* was fraudulent. This *Matlock* and *Plaster* deny, insisting that *Matlock* fairly, and without

condition, purchased at sheriff's sale, and as fairly sold to *Plaster*.

The naked facts of the case strongly indicate something wrong. Land worth 1,000 dollars is purchased for 200 dollars, is suffered to remain in the possession of the then owner, as if no change of title had taken place, for five years, and is then sold, while still worth 1,000 dollars, for 500 dollars, without removing the occupant.

The circumstances surrounding the transaction still more strongly indicate fraud.

*Jeremiah Depew* says he had a judgment against *Burger* for 260 dollars, which he intended to secure by bidding on the property; that he attended the sheriff's sale, and when he arrived at the place, he found *Burger* and *Matlock* in a private room, engaged in conversation; that he stated to them that he had come to the sale and intended to buy the property unless his claim was arranged; that *Burger* replied that he and *Matlock* were then attempting to arrange the matter, and that it would be done; that *Matlock* made no objection—said nothing; that he, *Depew*, accordingly, did not bid at the sale; and subsequently called on *Matlock* to pay his judgment according to the understanding, but *Matlock*, not denying the agreement, put him off, saying he had not got quite through with his arrangements with *Burger*, and promising to pay the judgment as soon as he should do so.

*Edmund Clark* says he attended the sale with a view of bidding, should it become necessary, to secure himself in a matter wherein he was security for *Burger*, and that he so informed *Burger*. "*Burger* then said, 'you want to ruin me.' Witness replied that all he wanted was to secure himself on account of his liability as security for him. Witness also told *Burger* that if he, witness, should purchase the property, he, *Burger*, should have the same back by paying the purchase money and the amounts for which witness was liable. *Burger* replied that he would not, or that it would not suit; that *Matlock* was going to bid off the property, as his impression was, for *Burger*. Witness then told *Burger* that if *Matlock* would make him, witness, safe,

witness would not bid; that he did not want the property. *Burger* then went to *Matlock*, about twenty-five or thirty feet distant, and, after a short conversation, which witness did not hear, *Matlock* turned to witness and said 'I will do it,' in rather an angry manner. Immediately afterwards the sale commenced, and *Burger* and *Matlock* came up to witness, and *Matlock* said to witness, 'you may' or 'you must bid till it comes up to the amount of 200 dollars, and then stop, so as to prevent people from thinking there is an arrangement.' Witness bid up to 195 dollars, and said property was struck off to *Matlock* at 200 dollars."

*Joseph S. Miller* says, in 1850 said *Matlock* called on *Burger*, in presence of witness, and told him he had come to make some arrangement about said property, and asked if he was going to redeem it, as he had the preference over anybody else; and that *Burger*, in said conversation, claimed that he had paid the redemption money already.

It is evident, from the record, that bidding was prevented at the sheriff's sale, by the promises of *Matlock* to the execution-defendant and his creditors, that those creditors should be paid and *Burger* permitted to redeem, whereby said execution-defendant's property was sacrificed. And we think the circumstances under which *Plaster* purchased, sufficient to have put him on inquiry and to charge him with notice.

The question then arises, is *Burger* entitled to any redress?

The cause not having been heard finally, and a decree rendered, we have no question before us as to the particular shape in which redress shall be given. The only question before us is, shall any be accorded, and should the suit at law be restrained till the final hearing of this cause? On these points we have no doubt. *Burger* and his creditors must, by some decree, have the benefit of his property of which they have been defrauded through *Matlock's* promises, or they must have a fulfilment of those promises; and the ejectment should be stayed till the final redress is decreed. See *Bunts* v. *Cole*, 7 Blackf. 265, and *Benton* v. *Shreeve*, 4 Ind. R. 66.

*Per Curiam.*—The decree is affirmed with costs.

*J. S. Harvey* and *J. M. Gregg*, for the appellants.

*A. A. Hammond* and *C. C. Nave*, for the appellee.