GILBERT
v.
CARTER.

GILBERT *v.* CARTER.

Where a bidder at sheriff's sale prevents others from bidding, by representations touching the object of his bid, and buys the property at a price much below its value, the sale is void, as against public policy.

But where no person was influenced by such representations, except the attorney of the execution-plaintiff, and it did not appear that he would have bid more than enough to cover the debt, a sale for the amount of the debt was held valid, though that amount was much less than the value of the property.

The representation in this case was, that the bidder wished to purchase the property for the use of the execution-defendant and his family; but the statement was not reduced to writing. There was no contract or understanding between the purchaser and the execution-defendant, nor did the latter advance any part of the purchase-money, nor was there any proof of fraud. *Held,* that no trust was created.

*Monday,
December* 21.

APPEAL from the *Dalaware* Circuit Court.

DAVISON, J.—This was a suit in chancery, under the old system of procedure. The facts stated in the bill, answer and depositions, so far as they relate to the material questions in the case, are as follows:

At the *September* term, 1840, *E.* and *P. Frost* recovered a judgment in the *Delaware* Circuit Court, against *Gilbert*, for 129 dollars. An execution was issued on this judgment, and by virtue of it, a lot of ground in *Muncie*, on which was a tavern stand, was advertised to be sold on the 21st of *December*, 1840, by the sheriff, as the property of *Gilbert*. On the day of sale, *Carter*, who was *Gilbert's* son-in-law, called upon *Jacob B. Julian*, the attorney for the execution-plaintiffs, stated that it was a hard case to have *Gilbert* and his family turned out of it, and proposed to buy the lot for their use, provided he could have time for a part of the purchase-money. *Julian* then said it was money, and not property, his clients wanted; and upon the repeated representations of *Carter*, that he had no desire to reap any advantage from the purchase, but would buy the lot for *Gilbert* and his family, he, *Julian*, acceded to the proposition; and believing the representations to be true, was induced not to bid at the sale, and to allow *Carter* to bid off the property, which he accordingly did at the price of 129 dollars, the amount of the judgment; and *Carter*, hav-

ing received a sheriff's deed pursuant to the sale, paid *Julian* 50 dollars in hand, and gave his promissory note for 79 dollars, the residue, and executed a mortgage on the property to secure the payment of the note.   This was, in substance, all the evidence relative to *Carter's* purchase of the lot.

The bill prayed that *Carter* be compelled to convey the property to *Gilbert*, and for general relief, &c.   Upon final hearing, the Court dismissed the bill.

The decision of the case at bar depends upon the solution of this inquiry—Was the sheriff's sale valid?   If it was, the decree of the Circuit Court must be sustained.

The rule is that where a bidder at sheriff's sale prevents others from bidding, by representations respecting the object of his bid, and then buys the property at the sale at a price much below its value, the sale is void, as against public policy.   7 Blackf. 268.—5 Ind. R. 232, 487.—6 *id.* 448.

As we have seen, *Carter* bought the property for 129 dollars, the full amount of the judgment; but it is not shown that any person other than *Julian* was influenced by the representations.   Nor does it appear that he would have bid more than enough to cover the entire debt.   This he may have intended to do, in discharge of a duty to his clients; but the facts proved will not allow the inference that he would have done anything more.   The sale, then, so far as the representations affected the bidding of *Julian*, stands as it would have stood had they never been made. He said his clients did not want the property.   The agreement to give time for a part of the purchase-money, may have been induced by the representations; but there is nothing in the evidence tending to prove that in their absence the property would have sold for any advance on the amount at which it was bid off by *Carter*.

It follows that the rule to which we have referred does not apply to the case before us; and the sheriff's sale must, therefore, be held valid.

This leads us to inquire whether *Carter*, in respect to the property, became a trustee of the plaintiff.   The statement that he would buy the lot for the use of *Gilbert* and

Nov. Term,
1857.

Rose
v.
Bath Town-
ship.
his family, was not available as an express trust, because it was not reduced to writing. Nor is this a case of resulting trust; because the sheriff's sale was valid. In relation to the purchase, no contract or understanding appears to have existed between *Carter* and the plaintiff. He advanced no part of the purchase-money; nor does he appear to have been the victim of any fraud. *Irwin* v. *Ivers*, 7 Ind. R. 308.

In our opinion, the decree should be affirmed.

Stuart, J., dissented.

*Per Curiam.*—The decree is affirmed, with costs.