Hunt v. Elliott *et al.*

---

No. 9086.

HUNT v. ELLIOTT ET AL.

STATUTE OF FRAUDS.—*Agreement.*—*Public Policy.*—*Sheriff's Sale.*—*Trust.*—An agreement between two persons that one of them shall purchase at sheriff's sale certain personal property, and hold, use and dispose of it in his own name, for the benefit of both, is not within the statute of frauds, nor is it against public policy.

SAME.—A trust may arise or be created with reference to personal property the same as real estate, except as to personal property the trust may be in parol.

CONTRACT.—*Presumption.*—A contract, susceptible of two constructions, one legal and the other illegal, should be presumed to be legal and upheld.

INSTRUCTIONS.—*Evidence.*—*Record.*—*Supreme Court.*—When the evidence is not in the record, no question can be made in the Supreme Court upon the refusal to give instructions to the jury,[1] and instructions given, if correct in any possible state of evidence, will be sustained.

SAME.—*Practice.*—If instructions prayed are not signed by the party or his counsel, the court may refuse them.

From the Randolph Circuit Court.

*M. Way,* —— *Cheney* and *E. L. Watson,* for appellant.

*H. H. Patty, W. A. Thompson, A. O. Marsh, J. W. Thompson* and *J. H. Jordan,* for appellees.

FRANKLIN, C.—Appellees sued appellant for damages for the breach of a certain contract in relation to the bidding off certain property at a sheriff's sale upon the foreclosure of a mortgage held by appellees. There was a demurrer overruled

---

[1] It is now otherwise. See R. S. 1881, section 650. Rep.

to the first paragraph of the complaint. Issue formed, trial by jury, and a verdict for appellees. Over a motion for a new trial, judgment was rendered for appellees for $125.

The errors assigned and complained of are the overruling of the demurrer to the first paragraph of the complaint, and the overruling of the motion for a new trial.

The reason assigned in the motion for a new trial, the ruling upon which is complained of, is error of the court in its instructions to the jury.

The objection urged against the first paragraph of the complaint is that the contract sued upon is void, for the reasons: 1st, that it is contrary to public policy; 2d, that it is within the statute of frauds. The second paragraph of the complaint was a common count, and need not be further noticed, as no evidence was given under it.

The substance of the first paragraph, to which the demurrer was overruled, is as follows: That on the 22d day of January, 1877, and prior thereto, appellee Minerva Elliott was the owner of a one-half interest in a portable saw-mill, etc.; on that day she sold the same to one Bradstreet, he then owning the other half, and took his three notes for the balance of the unpaid purchase-money, and a chattel mortgage on the mill, to secure the payment of the same, which mortgage was duly recorded; two of the notes were for $100 each and the other for $72.50; that she sold the last named note, and, after passing through the hands of another, it was finally endorsed to appellant; that she foreclosed the mortgage, but at the time of the foreclosure did not know that appellant held the note, and he was therefore not made a party to the foreclosure suit; that there was a prior mortgage on said mill in favor of Bayless Vaughn & Co., which had been foreclosed for $250.65; that appellee Minerva Elliott caused a copy of the decree to be issued on her judgment of foreclosure, and the property to be advertised for sale on the same; that appellant, on learning these facts, sent his agent Ludy to Lewis O. Elliott, as agent and husband of Minerva, and said agents, for and on

behalf of their said principals, entered into an agreement in substance as follows: That for the purpose of securing the payment of the note which had been endorsed to appellant, the appellee Minerva should not attend and bid on the property at the sheriff's sale; that appellant should bid off the same as low as he could, take the mill and run the same, and furnish the appellee Lewis O. Elliott work in the mill at $1.25 per day, replevy and finally pay the judgment and costs in favor of the said Bayless Vaughn & Co.; that when the earnings of said mill had been sufficient to pay the note held by appellant, and the interest thereon, the Bayless Vaughn & Co. judgment of foreclosure, and the incidental expenses of running the same, then the appellant and appellee Minerva Elliott should each own the undivided one-half of said mill, etc.; and it was also further agreed that if the said Minerva Elliott should, before the said earnings of said mill had been sufficient to pay appellant said sums above named, find a purchaser for said mill, who would take the same and pay appellant said sums which he had paid and was coming to him, he should then deliver said mill to said purchaser, and said appellee should cause said purchaser to pay said sums to said appellant, except such part of said sums as had been paid out of the earnings of said mill; that, in pursuance of said agreement, said Minerva did not attend or bid at said sale, but appellant did bid off said mill, subject to the first mortgage lien, at and for ten (10) dollars; that appellant ran and operated said mill for one year; that he refused to employ said Elliott to work, and made $1,000 out of the earnings of the mill, which was more than enough to pay the expenses of running the same, and the several sums above named, which appellant was to pay; that, after appellant had run the mill for some time, appellee Minerva found a purchaser for said mill, and she requested the appellant to deliver said mill to said purchaser upon his complying with said agreement, all of which appellant refused, and converted the same to his own use; that said mill property was then of the value of $1,000; that

appellant refused to let appellees have anything to do with said mill or account to them in any way therefor, but sold the same for the sum of $1,000, and appropriated the proceeds to his own use.

There being no averment in the complaint that this agreement was in writing, and there being no copy filed therewith, the presumption is that it was in parol. *Krutz* v. *Stewart*, 54 Ind. 178; *Langford* v. *Freeman*, 60 Ind. 46; *Goodrich* v. *Johnson*, 66 Ind. 258.

The first question that arises is, was this agreement void by reason of its being contrary to public policy?

It is well settled that a combination and agreement, between parties at a public sale by auction, not to bid against each other, or to use any artifice or other means to prevent others from bidding, for the purpose of chilling or depressing the sale, and buying the property at a sacrifice, for less than it is worth, is a fraud upon the owner, contrary to public policy and void. But we think it is equally well settled that there may be a joint bidding in the name of one, by joint lien-holders, for the purpose of securing all the lien-holders by participating in the effects of the sale. And, where such is the case, an agreement between them not to bid against each other is not contrary to public policy, the object being to secure all the liens so far as can be, and not to make the property sell for a less price. If it did have the effect to reduce the price at the sale, that would be an incident and not the purpose of the agreement. In the case at bar, there was no effort made by either of the parties to prevent others from bidding at the sale. Appellee did not attend the sale, but relied, under the agreement, upon her debt being secured by the property being bid off in the name of appellant. They were both lien-holders, having the same mortgage upon the property. Appellee's foreclosure judgment did not merge her mortgage lien in the judgment; it still continued. *Lapping* v. *Duffy*, 47 Ind. 51; *Goddard* v. *Renner*, 57 Ind. 532; *Cauthorn* v. *Indianapolis, etc., R. R. Co.*, 58 Ind. 14.

There is nothing in the complaint that shows appellee intended to or would have bid upon the property but for the agreement, or that the property sold for less than it would have sold had there been no such agreement. Without the agreement, perhaps, appellee might have procured some person who was able to pay off the older encumbrances, to bid off the property at a sum sufficient to have paid her debt, but her not having done so either with or without the agreement, could not be construed into a fraud upon the owner, he being declared insolvent, nor as against public policy. *Smull* v. *Jones,* 1 Watts & S. 128; *Smull* v. *Jones,* 6 Watts & S. 122; *Holmes* v. *Holmes,* 3 Rich. Eq. 61; *Hamilton* v. *Hamilton,* 2 Rich. Eq. 355.

Where a contract is susceptible of two constructions, one legal and the other illegal, it should be presumed to be legal, and the court should give it the legal construction and uphold the contract. And where the illegality is based upon a question of fraud, and the fraud charged does not clearly appear upon the face of the contract, as a question of fact it should be left to the jury upon the trial, and not be decided on a demurrer. The intention and purpose of the parties are to be considered in construing the agreement. Herman on Executions, 317, sec. 205; *Phippen* v. *Stickney,* 3 Met. 384; *Young* v. *Snyder,* 3 Grant Cas. 151; *Buckner* v. *Chambliss,* 30 Ga. 652; *Guernsey* v. *Cook,* 120 Mass. 501; 2 Chitty on Contracts, 979; Moak's Van Santvoord's Pleadings, 349.

In Freeman on Executions, sec. 297, we find the following: "But it does not necessarily follow, because one person bids for the benefit of himself and others, or because two or more persons join their capital for the purpose of making a purchase at such sale, that there has been an unlawful or fraudulent combination. * * * Other instances frequently occur in which two or more persons may lawfully unite in making a purchase. In fact, the union of two or more persons in purchasing at an execution sale seems never to be condemned, unless the court conceives that its object is to prevent competition, rather

than to engage in the joint prosecution of an honorable business enterprise."

In Herman on Executions, *supra,* the following language is used : " But if the purposes of the agreement be to enable each of the parties to become a purchaser of the property offered for sale, not desiring the whole, or if the agreement be for any other honest or reasonable purpose, it is not void. An agreement between creditors, for whose benefit an assignment in trust of a chattel mortgage has been made, and the assignee, that at the sale at auction, under the mortgage of the property covered thereby, the assignee shall bid the same in, and if any of the creditors bid on any of the articles sold, the assignee shall assume their bids and hold all the property so purchased, and apply it to the payment of debts, is not contrary to public policy as intending to prevent competition at a public sale."

Appellant has brought this case to this court without the evidence, and asks this court to decide upon the face of the agreement that it is against public policy and void. If this does not clearly appear, he should have done by answer and proof at the trial what he now asks this court to do upon the pleadings. Fraud *in fact* is never presumed, but must be proven by the party who charges it. *Farmer* v. *Calvert,* 44 Ind. 209 ; *Stewart* v. *English,* 6 Ind. 176 ; *Tenbrook* v. *Brown,* 17 Ind. 410.

Rorer on Judicial Sales, p. 43, sec. 77, 2d ed., says : " Several persons may join together and lawfully bid as a unit, if done in good faith. ' It is not every joint bidder or partnership among bidders at a sale under a decree in chancery * * that is corrupt and fraudulent. Such joint or partnership bidding may be perfectly legitimate.' "

The case of *Switzer* v. *Skiles,* 3 Gilman, 529, is a leading case, and directly in point upon the present as well as subsequent propositions in this case, in which it was held : " Where a sale of land is made at public auction, and all persons are at liberty to bid, an agreement among different claimants to

different portions of the land with an individual to purchase the whole tract for their benefit, is not such an agreement as is calculated to prevent competition and thereby to render the sale void." The court uses the following language: "Another cause of demurrer is, that the agreement respecting the purchase of the land was contrary to the policy of the law, and therefore void. There is no force in his objection. It is difficult to conceive in what manner the government was prejudiced by the making or the carrying into effect of the agreement. It amounted simply to this: that Haight should attend the sale and purchase the land for the benefit of those having improvements thereon. The sale was at public auction, and, of course, all persons were at liberty to bid. This agreement was not calculated to prevent competition, and in that way lessen the price the government might obtain."

It will be observed that that case was between the parties to the agreement and for the purpose of enforcing it.

In the case of *Smull* v. *Jones*, 1 Watts & Serg. 128, the court held, that lien creditors may purchase jointly at sheriff's sales. A combination of interests for that purpose is not necessarily corrupt. But to make the transaction fraudulent it must amount to a conspiracy to depress bidding.

This case was again before the Supreme Court of Pennsylvania, and is reported in 6 Watts & Serg. 122. On page 126, it is said of the court below: "The court, on the contrary, ought to have told the jury that such an agreement was perfectly lawful, and therefore would not avoid the sale. It would be repugnant to every principle of common sense, reason and law, to say that two or more, and especially judgment or lien creditors of a debtor, whose real estate had been taken in execution and was about to be sold by the sheriff, could not agree to become joint purchasers thereof, provided it were not bid for by others beyond a fixed sum, and that one of them should bid in his own name for the common use of all of them. But it is said that such an agreement, in its effect, prevents competition, and therefore inevitably tends to depress

the price for which the property would otherwise be sold, to the injury of the debtor and the other creditors. Admitting this to be true in part, which is all that can be claimed, at most, what right has the debtor, or have the other creditors, to demand and require that there shall be a competition, either among the creditors of the debtor or among those who are not of his creditors? * * Every man must be left to act as he pleases in such case; that is, either to bid singly for the property, if he wishes to buy, and be able, or to unite with others, as he may think it most suitable to his means, and most advantageous to himself in any other respects. But it is far from being true that every agreement of the kind has a necessary tendency to lessen the price that otherwise might be obtained for the property at the sale; on the contrary, it may tend to increase it."

In the case of *Holmes* v. *Holmes*, 3 Rich. 61, the court uses the following language : " It is not every joint bidding, or partnership among bidders, at a sale under a decree in chancery, that is corrupt and fraudulent. Such joint or partnership bidding *may* be perfectly legitimate. To render them unlawful and void, there must be a fraudulent intent to depress and chill the sale, to obtain the property at an under value, or to obtain other undue and unconscientious advantages. * * * A fraud in a case like this, as in every other case, must be judged of by all the attendant circumstances. If the co-partnership in bidding appears, from the attendant circumstances, to have been entered into with a fraudulent intent to depress and chill the sales, and to obtain undue advantages in the purchase of property, the sale will be vacated. If such joint bidding has no such fraudulent intent, and is *bona fide*, it will not have the effect of vitiating the sale." See also *Hamilton* v. *Hamilton*, 2 Rich. Eq. 355 ; *Smith* v. *Greenlee*, 2 Dev. L. 126 ; *National Bank, etc.*, v. *Sprague*, 20 N. J. Eq. 159, 168–9.

In the case of *McMinn* v. *Phipps*, 3 Sneed, 195, the court, in speaking of an agreement not to bid against each other, says : " Upon the first proposition there can be no doubt that

if the land had been divided into three lots and sold separately, and Mr. Taylor had desired to purchase lot No. 1, Mr. Springfield lot No. 2, and Mr. Degraffenried No. 3, and they had agreed among themselves that neither should bid against the others for the lots they desired to purchase respectively, such an agreement would have been a fraudulent combination to avoid competition, and the sales would have been voidable. * * But such is not this case. Here, the whole tract was to be sold together, and each of the parties wanted certain portions of it, but neither wanted to purchase it all. Hence they entered into an agreement to purchase jointly, and to make a division among themselves so as to suit the covenience of each. Such an agreement is not a fraudulent combination to stifle competition, nor is it against public policy or strict morality." In that case the court approvingly cites 2 Dev. L. 126. In the case of *James* v. *Fulcrod*, 5 Tex. 512, it was agreed between two that one should bid off a lot for the use of both; the one bid off the lot, and refused to keep the agreement. The court held the agreement valid, and after citing many authorities say: " The facts, set forth in the petition, show no fraudulent combination or artifice to stifle fair competition, to the injury of the vendor or to secure the lot at less than its value."

In the case of *Buckner* v. *Chambliss*, 30 Ga. 658, the court below took the same view of the law that appellant's learned counsel do, and told the jury below as a matter of law, that if defendants " combined not to bid against each other, the sale was void." In reviewing the action of the court below, the Supreme Court say of this: " It was equivalent to saying that persons could not buy property at sheriff's sale on joint account, for every agreement to buy on joint account implies an agreement that they will not bid against each other. There is no such rule of law as that. If they had used any means unfairly or fraudulently to prevent other persons from bidding for the property, that would have defeated the sale as to them."

Bishop on Contracts, section 481, contains the following:

"Partners, or persons contemplating a partnership as to the particular thing; several, who each want a part, and not the whole, of the thing, and are to divide it between themselves; and others, whose object is not an undue advantage but a fair purchase, may enter into a valid arrangement for one to bid and the rest abstain."

The case of *Phippen* v. *Stickney*, 3 Met. 384, is, perhaps, the leading case upon this subject, and is cited and relied upon by both sides in this case. And, after reviewing the authorities on this question, the court use the following language: "It seems to us, after some consideration of this question, and an examination of the adjudged cases bearing upon it, that we can not judicially declare that every contract between two or more individuals, in which it may be stipulated that one is to be the purchaser for the joint benefit of himself and another, and that the other is not to interfere with his bidding, shall, when attempted to be enforced for the benefit of the associates, be held void as a fraud upon the rights of the vendor and against public policy, merely because he who seeks to enforce the contract may have been thereby induced to abstain from bidding. * * * The extent, to which the doctrine of invalidating such contracts can be safely carried, would rather seem to embrace within the rule all cases of fraudulent acts, and all combinations having for their object to stifle fair competition at the biddings, with the design of becoming the purchasers at a price less than the fair value of the property. Beyond this, the application of the principle contended for may be found productive of mischief and an unwarrantable interference with the course of business in auction sales. We are therefore of the opinion, that an agreement between A. and B., that A. will permit B. to become the purchaser of certain property about to be offered at sale at public auction, and that A. shall participate with B. in the benefits of the purchase, will or will not be fraudulent, as the circumstances of the case show innocence of intention or a fraudulent purpose in making such agreement."

Bigelow on Frauds, p. 142, has the following language: "Parties may purchase jointly at public sales, if all be open and fair. A combination of interests is not necessarily corrupt. It is the end to be accomplished which determines whether a combination is lawful or otherwise. If it be to depress the price of the property by artifice, the purchase will be void; if it be to raise money for payment, or to divide the property for the accommodation of the purchasers, it will be valid." *Breslin* v. *Brown,* 24 Ohio St. 565; *Smith* v. *Greenlee,* 2 Dev. 126; *Atcheson* v. *Mallon,* 43 N. Y. 147. We do not find that this precise question has heretofore been before this court. The cases of *Bunts* v. *Cole,* 7 Blackf. 265, *Plaster* v. *Burger,* 5 Ind. 232, *Forelander* v. *Hicks,* 6 Ind. 448, and *Gilbert* v. *Carter,* 10 Ind. 16, are all in relation to preventing third parties at the sale from bidding.

From the foregoing authorities we come to the conclusion that the agreement in the case at bar is not fraudulent and void on its face, as being against public policy. And if it was fraudulent in *fact* it was necessary that the appellant should allege that in his answer and prove it upon the trial. In the case of *Phippen* v. *Stickney, supra,* the court held as follows: "In the case before us, upon the facts stated, we do not feel authorized to set aside this agreement as illegal or fraudulent upon the principles we have stated. Fraud is not to be presumed, where the contract is, on the face of it, consistent with honesty of purpose and fair dealing. If the defendant would avail himself of a defence of that character, it must be upon the findings of a jury, or upon a case stated by the parties clearly disclosing such fraudulent purpose. This contract might have been entered into by these parties, for good and justifiable reasons; and it is not, therefore, to be deemed fraudulent and void upon the face of it."

In the case of *Bradley* v. *Kingsley,* 43 N. Y. 534, the court say: "No principle or authority warrants a court to pronounce such an arrangement fraudulent, as a matter of law."

In the case of *James* v. *Fulcrod,* 5 Texas, 512, the court

say : " Had the question arisen otherwise than on demurrer, and had it been shown that the lots generally sold at rates higher than the fixed limit, and that the effect of this agreement prevented the property from attaining its full price— and this could have been affirmatively proven—the transaction would have been repugnant to public policy, and consequently null and void. But as the case is presented, the agreement is most clearly within the specific qualifications of the rule as found in the cases of *Smith* v. *Greenlee,* 2 Dev. 126, and *Phippen* v. *Stickney,* 3 Met. 384." See also Bigelow Fraud, 142 ; *Goss* v. *Austin,* 11 Allen, 525 ; *Smull* v. *Jones,* 1 Watts & Serg. 128 ; Moak's Van Santvoord's Pleadings, 563.

Thus we see that the authorities hold that the court, as a question of law, can not hold such contracts illegal and void, if they are susceptible of a construction that makes them legal ; but the question of the fraudulent or illegal intent is one for the jury. There is nothing in the objection, incidentally mentioned, that the agreement was without consideration. All the authorities heretofore cited recognize the agreement as being based upon a sufficient consideration.

The last objection to the complaint is that the contract is within the statute of frauds, because it is a contract for a future sale, and that the property sold or to be sold is of the value of more than fifty dollars. We think there is no element of a sale or of a contract for a future sale between the parties in the contract set out in the complaint. The agreement between the parties is, that, when the net earnings of the mill were sufficient to pay certain debts and claims, each was to own onehalf of said mill ; but if before the net earnings amounted to such a sum, appellee Minerva should find a purchaser, appellant should deliver the mill, and appellee Minerva should cause said purchaser to pay appellant certain sums agreed upon. It was not an agreement that appellant should sell in the future. But he holding as trustee, upon appellee Minerva's causing a purchaser to pay to him said sums, at her request, he was to deliver said mill to the purchaser, or, if she found

no purchaser, they were to become joint owners of the property. Appellee Minerva had a lien on this property; it was advertised to be sold to satisfy this lien; for the accommodation of appellant, she arranged with appellant that he should bid off the property and hold it on the terms agreed upon. By the sale the amount of appellee Minerva's foreclosure judgment ($200) may be said to be invested in the property, and appellant's $82.50, his note and bid also were invested in the same. Bradstreet being insolvent, they could look alone to the property for payment. And after that appellant held it in trust.

A trust may arise or be created with reference to personal property the same as real estate, and the same rules obtain, except as to personal property it may be in parol; trusts concerning real estate only are required to be in writing. 1 R..S. 1876, p. 915, section 1; Hill Trustees, 44; 1 Perry Trusts, section 67.

A number of the cases cited in this opinion, showing that the contract is not void as against public policy, also hold that such a contract creates a trust in the one who bids off the property, and the agreement is not within the statute of frauds.

In the case of *Miller* v. *Robert*, 18 Texas, 16, it was held, that where one party furnishes another funds with which to buy lands for him or for them jointly, it creates a trust, and is not within the statute of frauds. It is not a contract for the sale of land. Also, where one party was to furnish land certificates, and the other to perform the labor and pay expenses, and have a share in the land, this was a contract to acquire jointly, and the party in whom the title rests holds in trust for his co-tenant. *Gibbons* v. *Bell*, 45 Texas, 417; *Smock* v. *Tandy*, 28 Texas, 130; *Jenkins* v. *Frink*, 30 Cal. 586.

If two parties, each having written title to a tract of land, purchase a supposed better title, under an agreement to divide the premises, the one who takes the title is estopped to deny the right of the other to a moiety of the land. *Rupp* v. *Orr*,

31 Pa. St. 517; *Cook* v. *Cook*, 69 Pa. St. 443; *Smiley* v. *Dixon*, 1 Pa. 439.

In the case of *Arnold* v. *Cord*, 16 Ind. 177, it was held that "'A person agreeing verbally to bid in land for another at sheriff's sale, shall be bound and decreed to hold in trust, though he took the title in his own name, and plead the statute of frauds in bar.' *Denton* v. *McKenzie*, 1 Desaussure, 289."

"'Where A. agrees with B. to purchase property at sheriff's sale for B., and he purchases the property, but takes an absolute conveyance to himself and refuses to convey to B., the latter, not being privy to the conveyance, is not bound by it and may prove the trust by parol.' *Strong* v. *Glasgow*, 2 Mur. 289. A Court of Chancery relieves against fraud by converting the person guilty of it into a trustee for those injured thereby."

Appellant, acting as the agent of appellee Minerva and for himself, under the contract set out in the complaint, in effecting this purchase, and appellee confiding in his promises and assurances, and relying upon the contract, ceased to give any attention to the sale of the property. Appellant bought and then refused to allow appellee to participate in the results or profits of the sale, according to the contract, and takes the property and converts it to his own use. A court of equity will not allow appellant to obtain and hold title to property and convert it to his own use under such circumstances, and to thus sacrifice and disregard the interests of those for whom he acted, but will convert him into a trustee for the appellee. *Switzer* v. *Skiles*, *supra*; 1 Perry Trusts, sec. 166; Browne Statute of Frauds, sec. 96 *a*. In such case equity creates a constructive trust not within the statute of frauds, which may be established by parol evidence. See *Cox* v. *Arnsmann*, 76 Ind. 210. But if this contract was within the statute of frauds, it was so far executed that equity would estop appellant to take advantage of it, by pleading the statute of frauds as a defence. Browne Statute of Frauds, secs. 448 and 448*a*, and authorities therein cited.

" A court of equity will not permit the statute of frauds to be set up as a defence by a party infected with fraud. And parol trusts in real estate have been frequently established in direct contradiction of the statute, on the ground of fraud." *Arnold* v. *Cord, supra; Teague* v. *Fowler,* 56 Ind. 569.

We think the first paragraph of the complaint stated facts sufficient to withstand a demurrer. And there was no error in the overruling of the demurrer.

The motion for a new trial is based upon alleged error in refusing to give instructions asked, and in the giving of instructions.

The instructions asked and refused are not signed by appellant or his counsel; the court had a right to know whence they came, and who was asking them; if not signed by any person, it had a right to refuse to give them. The evidence is not in the record and the instructions asked may not have been applicable to the evidence in the case. Every reasonable presumption will be indulged in favor of the action of the court in not giving the instructions. *Stott* v. *Smith,* 70 Ind. 298; *Choen* v. *Porter,* 66 Ind. 194; *Sutherland* v. *Hankins,* 56 Ind. 343; *Etter* v. *Armstrong,* 46 Ind. 197; *Bush* v. *Durham,* 15 Ind. 252; *Maghee* v. *Baker,* 15 Ind. 254; Buskirk's Practice, 105. There was no error in the refusal to give the instructions asked.

As to the instructions given by the court; it has been repeatedly decided by this court, that, where the evidence is not in the record, if, under any reasonable supposable state of the evidence, the instructions given could have been correct, it will be presumed that such a state of the evidence did exist. *Higbee* v. *Moore,* 66 Ind. 263, and cases therein cited.

We can not say that, in any view of the case that may have been presented by the evidence, any of the instructions given were necessarily erroneous. But that the whole instructions taken together fairly covered a reasonably supposed state of the evidence.

There was no error in overruling the motion for a new trial.

We find no error in this record; the judgment below ought to be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment below be and it is in all things affirmed, with costs.