Filed Jan. 17, 1891.

---

### No. 14,733.

### ANDERSON ET AL. *v.* PEDIGO ET AL.

EXECUTOR'S SALE.—*Stifling Competition.*—Where property is purchased at an executor's sale for much less than its actual value by means of representations made by the widow to those interested in the estate that she would bid it off for a sum much greater than the bid which she actually made, by means of which parties who would have bid a greater sum were induced to stay away from the sale, the sale will be set aside.

SAME.—The unauthorized statements of a brother of the widow as to what

she would bid are not binding upon her, and will not invalidate her title acquired at such sale.

From the Monroe Circuit Court.

*J. H. Louden, W. P. Rogers, J. W. Buskirk, P. K. Buskirk, R. W. Miers* and *E. Corr,* for appellants.

*J. R. East* and *W. H. East,* for appellees.

COFFEY, J.—This was an action by the appellees against the appellants to set aside a sale of personal property made by the executor of the will of Simeon Pedigo to the appellant Mary B. Pedigo, who is the widow of the said Simeon. The material allegations in the complaint are to the effect that appellant William J. Lowe, as the executor of the last will of the deceased, sold the personal property at public sale on the 6th day of October, 1888 ; that among other property, the executor sold a washing machine factory and planing mill, of the value of $2,700 to the said Mary B. Pedigo, for the sum of $800 ; that on the day of the sale, and prior thereto, the appellant Ed. L. Anderson and the said Mary, with the intent to keep parties from bidding on said property, and with the fraudulent intent to buy said property at a greatly reduced price, represented to Solon Pedigo and other creditors of said estate that the said Anderson and Mary would bid on said factory and planing mill the sum of $1,500, and that the said Mary would use the amount of insurance money received by her on account of the death of her husband to pay off the debts of said estate ; that relying on said representations the said Solon did not attend the sale and bid on said property, otherwise he would have bid therefor the sum of $1,500 ; that on a fair sale said property will bring $2,000 ; that the estate is indebted to the appellees in the sum of $1,100.

With the complaint the appellees filed a bond, binding themselves to make the property in controversy bring at least $1,500 in the event a resale was ordered.

The court overruled a demurrer to the complaint, and upon

a trial of the cause set the sale aside and ordered the property resold.

The assignment of error calls in question the correctness of the ruling of the court in overruling a demurrer to the complaint, and in overruling the motion of the appellants for a new trial.

We are not favored with a brief on behalf of the appellees, and for that reason are without information as to the grounds upon which the circuit court made its several rulings in their favor.

We are of the opinion, however, that the court did not err in overruling the demurrer to the complaint. If the appellants bought the property in controversy for a much less sum than its actual value by means of representations made to those interested in the estate to the effect that they would bid it off for a sum much greater than the bid which they actually made, by means of which parties who would have bid a greater sum were induced to stay away from the sale, the sale should be set aside. *Gilbert* v. *Carter,* 10 Ind. 16 ; *Bunts* v. *Cole,* 7 Blackf. 265 ; *Plaster* v. *Burger,* 5 Ind. 232 ; *Vantrees* v. *Hyatt,* 5 Ind. 487 ; *Forelander* v. *Hicks,* 6 Ind. 448.

To permit a person to acquire title to property at a public sale, made by an administrator or executor, at a price much below its value, by means of stifling competition, would be against public policy. As held by the authorities above cited a title so acquired is void.

The only question argued under the assignment of error, relating to the motion for a new trial, is the one involving the sufficiency of the evidence to sustain the finding of the court.

It appears from the evidence in the cause that the property was purchased by the appellant Mary B. Pedigo at the executor's sale for the sum of $800.

The appellant Edward L. Anderson testified : " I met the appellee Solon Pedigo on the morning of the sale, and

he asked me how much Mrs. Pedigo would give for the prop-
erty. I replied that she told me she would bid as high as
$1,500 if she had to do so. I was not acting for Mrs.
Pedigo, and made no definite arrangement with her for tak-
ing an interest in the property at that time. She had wanted
me to go into partnership with her if she bought the fac-
tory and help manage it. I finally told her, a few days be-
fore the sale, that if she bought the property in for less than
$1,000 I would take an interest with her, but would not if
it went higher than that. I staid all night with my sister,
Mrs. Pedigo, the night before the sale, and agreed with her
that if the factory did not sell for over $1,000 I would take
a partnership in the matter. Two or three days after the
sale I bought a one-half interest and gave her my notes for
the purchase-price, which she yet holds."

The appellee Solon Pedigo testified : " I saw Ed. An-
derson on the morning of the sale and asked him how much
Mary Pedigo would bid for the factory. He replied that
she would bid $1,500 or $1,800. I then said if that was so
I would not attend the sale, but would go with the band to
Kirksville, and supposing she would bid this much I did not
go and did not get back till after the sale was made. The
property, I think, was worth $3,000. The property was part-
nership property. A man named Davis owned an interest in
it. He died a short time before Simeon Pedigo."

Appellant Mary B. Pedigo testified : ".I am the widow
of Simeon Pedigo. Was at the factory the day of the sale
and saw my brother Ed. there. I told him I would make
my first bid $800 and would bid as high as $1,500 if com-
pelled to do so to get the property. I never told any one
but Ed. that I would give $1,500, and then not unless I was
compelled to do so. In a few days after the sale I saw my
brother Ed. and arranged to let him have a half interest in
the property. I did at one time think I would take the
money paid me by the insurance company and pay the debts
but gave up the idea."

This is all the evidence in the cause upon the subject of keeping bidders away from the sale. We are of the opinion that it does not sustain the finding of the court.

There is no evidence in the record that Mrs. Pedigo, who bought the property, did or said anything which in the remotest degree tended to influence any one to stay away from the sale, or not to bid on the property. Unless she was guilty of some misconduct or fraud by which she obtained an advantage her title to the property, when she complied with the terms of the sale, became perfect, and the court could not set it aside. There is no evidence in the cause tending to show that her brother was authorized to make any statements for her, and without such authority he could not bind her. As she was guilty of no wrong her title must be regarded as perfect.

We think the court erred in overruling the motion for a new trial.

Judgment reversed, with directions to grant a new trial in the cause.

