## THE PROTECTION LIFE INSURANCE COMPANY

*v.*

## WILLIAM O. OSGOOD.

| 93 | 69 |
|154 | 336 |

1. CORPORATION—*liability for refusing to transfer stock to a purchaser.* A corporation will be liable in an action on the case for refusing to transfer on its books shares of its capital stock which it has issued, to a purchaser of the same, unless such stock is absolutely void for fraud or want of consideration, in which latter event no action will lie against the corporation for such refusal.

2. CONSIDERATION—*for shares of capital stock issued by corporation.* Where notes secured by mortgage on real estate are accepted by a corporation in payment for shares of capital stock subscribed,. and certificates of stock issued and delivered, this, as between the stockholder and the company, will constitute a good consideration for the stock.

3. FRAUD—*in giving securities in payment for stock.* The fact that securities given by a party to a corporation in payment for subscription to stock prove valueless, does not constitute such a fraud as to invalidate the certificates of stock issued and delivered, when it does not appear that the party knew the securities to be valueless, or represented them to be good, or resorted to any means whatever to mislead, deceive or defraud the company, or to prevent it from inquiring into the facts.

4. In an action on the case by a purchaser of stock in an incorporated insurance company, against the company, for refusing to transfer the stock on its books, the company offered to prove that when the subscription was made, checks were given by the parties subscribing for the amount of the stock, which the company agreed to hold until the State Treasurer should accept certain notes secured by mortgage which were given to the company in payment for the stock, and that after the Treasurer had passed upon and accepted the securities as a part of the guaranteed fund, the checks were returned; and that subsequently the securities were discovered to be of little or no value, and upon notice being given to one of the subscribers, he gave other securities, that also proved to be of little or no value. This evidence the court refused to admit. The proofs showed that the company still held all these securities, and there was nothing to show that the subscribers had acted fraudulently: *Held,* that there was no error in refusing to admit the evidence.

WRIT OF ERROR to the Appellate Court of the First District; the Hon. THEODORE D. MURPHY, presiding Justice, and Hon. GEORGE W. PLEASANTS and Hon. JOSEPH M. BAILEY, Justices.

This was an action on the case, by William O. Osgood, against the Protection Life Insurance Company, brought in the circuit court of Cook county, to recover damages for a refusal of the company to transfer on its books eighty shares of its capital stock, which has been issued to Mrs. Mary A. Williams and one Chesbrough.

The plaintiff claimed said shares by reason of a purchase thereof, and an assignment duly made to him by indorsement on the back of the certificates for the shares, and by a warrant of attorney authorizing the transfer of the shares to him, duly executed by Williams and Chesbrough.

The trial of the case resulted in a verdict and judgment in favor of the plaintiff for $10,070.67 and for costs. The case was taken by appeal to the Appellate Court of the First District, which, upon a hearing, affirmed the judgment of the circuit court, and the case is brought to this court by writ of error.

Mr. H. D. BEAM, and Mr. E. D. COOK, for the plaintiff in error, after stating the facts, made, among others, the following points:

1. The stock in question in this suit was never actually paid in cash, was illegal and void, and the company could not be required to transfer it upon its books. Rev. Stat. 1874, p. 604, secs. 36 and 37; *The People ex rel. Wallace* v. *Sterling Mfg. Co.* 82 Ill. 457.

2. Fraud avoids all contracts into which it enters, and may be set up as a defence, as well in courts of law as in courts of equity. *Jamison* v. *Beaubien,* 3 Scam. 113; *Rogers* v. *Brent,* 5 Gilm. 573; *Miller* v. *Markle,* 21 Ill. 152; *Winston* v. *McFarland,* 22 id. 38; *Sinnet* v. *Moles et al.* 38 Ia. 25.

3. Where a by-law of a corporation, authorized by its charter, provides that no transfer of stock shall be valid unless made on the books of the corporation, a purchaser without a transfer upon the books takes the stock subject to all the equities in favor of the corporation, or any other person.

*Kellogg* v. *Stockwell et al.* 75 Ill. 68; *Hall* v. *Rose Hill, etc., Road Co.* 70 id. 673; *McCready* v. *Rumsey,* 6 Duer (N. Y.) 574; *Stebbins* v. *Phœnix Fire Ins. Co.* 3 Paige (Ch.) 350; *Lockwood* v. *Mechanics' National Bank,* 9 R. I. 308; *Mechanics' Bank* v. *New York, etc., Railroad Co.* 13 N. Y. (3 Kern.) 599; *New York, etc., Railroad Co.* v. *Schuyler,* 34 N. Y. 30.

4. The provision that no transfer of stock should be valid until entered on the books of the company, was lawful, was designed for the protection of the company, and was binding on the holder and the transferee of stock. *The People ex rel. etc.* v. *Devin,* 17 Ill. 84; *Hall* v. *Rose Hill, etc., Road Co.* 70 id. 673; *Kellogg* v. *Stockwell,* 75 id. 68; *Oxford Turnpike Co.* v. *Bunnel,* 6 Conn. 552; *Merrimack Mining Co.* v. *Levy,* 54 Pa. St. 227; *Fisher* v. *Essex Bank,* 5 Gray (Mass.) 373.

5. It is true it has been held in some cases that such a transfer of stock, without compliance with the regulations and by-laws of the company, was good, even as against the corporation; but in no case in this country has it ever been so held unless it appeared affirmatively that the transferee was a purchaser for value and without notice of any fraud upon, or other defence, by the company. *Mt. Holly Turnpike Co.* v. *Ferree,* 17 N. J. Eq. 117; *Steamship Dock Co.* v. *Heron,* 52 Pa. St. 280; *Bond* v. *Mt. Hope Iron Co.* 99 Mass. 505; *Holbrook* v. *New Jersey Zinc Co.* 57 N. Y. 616.

6. The doctrine of estoppel can not be applied so as to give validity to what would be an illegal act, or to prevent the corporation from setting up, in answer to a claim to stock, that the same is void as having been issued in violation of law. *New York, etc., Railroad Co.* v. *Schuyler,* 30 Barb. (N. Y.) 534; *Mattox* v. *Hightshue,* 39 Ind. 95; *In re Comstock,* 3 Sawyer, 218, and cases cited; *Martin* v. *Zellerbach,* 38 Cal. 300; *The People ex rel. etc.* v. *Sterling Mfg. Co.* 82 Ill. 457; *Russell* v. *De Grand,* 15 Mass. 37.

7. Only parties and privies are bound by, and only those whose conduct it is intended to influence and their privies may take advantage of, an estoppel. If the act was *res inter*

*alios acta,* there will be no estoppel.   A stranger can neither take advantage of nor be bound by an estoppel.   This rule applies equally whether the estoppel arise by deed, by record, or from matter *in pais.*   Bigelow on Estoppel, 442, 2d. ed. ; *Regina* v. *Ambergate, etc., Railway Co.* 1 El. & Bl. 372; *Averill* v. *Wilson,* 4 Barb. (N. Y.) 180; *Kuhl* v. *Jersey City,* 8 C. E. Green (N. J.) 84; *Mayenborg* v. *Haynes,* 50 N. Y. 675; *Morgan* v. *Spangler,* 14 Ohio St. 102; *Simpson* v. *Pearson,* 31 Ind. 1; *Mills* v. *Graves,* 38 Ill. 455; *Messure* v. *Noble,* 11 id. 531.

Messrs. HIGGINS, FORBES & COTHRAN, for the defendant in error :

1.   The power to contract by a corporation with its stockholders, is the same as with ordinary persons.   It can buy of them, sell to them, make loans to them, and make contracts with them,—in all of which the parties are bound by the ordinary rules of contract.   *Sawyer* v. *Hoag,* 17 Wallace 623; *Harts* v. *Brown,* 77 Ill. 226; *Upton* v. *Tribilcock,* 91 U. S. 297; Angell & Ames on Corp. sec. 390.

2.   If the payment was made by check, and the same amount then loaned to the subscriber, as between the company and the subscriber there was a payment.   *Sawyer* v. *Hoag,* 17 Wall. 619.

3.   But even if the payment by the check be wholly disregarded, payment by bond and mortgage was such as could be accepted by the company, and was good;   the sale and issue of the stock were, therefore, not *ultra vires,* as claimed by the appellant.   *Coates' Case,* L. R. 17 Eq. 169; *Carr* v. *LeFevre,* 27 Pa. St. 413; *Stoddard* v. *Shetucket Foundry Co.* 34 Conn. 542; *Bridgeport Bank* v. *N. Y. and N. H. Ry. Co.* 30 id. 248.

4.   But even if the sale had been *ultra vires,* the company, having received a consideration, can not now be heard to say there was no contract.   *Bradley* v. *Ballard,* 55 Ill. 413; *Chicago Building Society* v. *Conwell,* 65 id. 453.

In this respect this case differs from the case of *The People*

v. *Sterling Co.* 82 Ill. 457, where there was no consideration
for the stock sought to be transferred, and which was issued
without even any pretence of payment therefor.   The contract,
therefore, must stand unless the pretended fraud avoided it.

5.   The appellee was entitled to the transfer of this stock,
having acquired a perfect title thereto; as against the corpo-
ration, he has a clear right of action for its value, after refusal
to transfer it to him.  Although not in form or character
negotiable paper, certificates of stock approximate it as nearly
as practicable.   *Bank* v. *Lanier,* 11 Wall. (U. S.) 369.

The legal title to the stock, as between the parties, passed
by the assignment and delivery of the certificate therefor.
*Leitch* v. *Wells,* 48 N. Y. 585.

The corporation is liable for a wrongful refusal to transfer
stock.   Field on Corporations, sec. 134.

Although certificates of stock do not possess the qualities
of commercial or negotiable paper, and even a *bona fide*
assignee will take them subject to all equities which existed
against the assignor, still, unless the right to the transfer on
the books of the company should be prohibited by contract
of subscription or otherwise, the corporation could not refuse
to permit such transfer; and in case of such refusal, the cor-
poration would be liable for all damage sustained thereby.
Field on Corporations, sec. 134, p. 149; *Bank* v. *Lanier,* 11
Wall. 369.

In this case it does not appear by the record, nor was there
any effort to show, that the corporation had any lien upon the
shares of appellee or his assignor.   We understand the law to
be settled, that a corporation has not a lien on the shares of its
stockholders for any indebtedness or liability to the company.
Field on Corporations, sec. 136; *Mass. Iron Co.* v. *Hooper,* 7
Cush. 483; *Sargent* v. *Franklin Ins. Co.* 8 Pick. 90; *Steamship
Dock Co.* v. *Hervie's Administratrix,* 52 Pa. St. 280; 1 Redf.
on Railways, sec. 33; 2 Dev. Chan. 111; Angell & Ames on
Corp. sec. 335, 10th ed.

There is nothing in the charter or by-laws of the Protection

Life Insurance Company giving a lien upon the stock of a shareholder. As between the buyer and seller of shares, a sale of the stock confers upon the buyer the right to demand a legal transfer of the shares on the company's book. *Webster* v. *Upton*, 91 U. S. (1 Otto) 65.

And for a refusal of said demand the company is liable in an action for damages as for a conversion of the stock. *Bank of America* v. *McNeill*, 10 Bush, 54.

A demand for a transfer, made upon any officer who has charge of the books for the purpose, is good. *Greenmount Turnpike Co.* v. *Bulla*, 45 Ind. 1; *Williams* v. *Mechanics' Bank*, 5 Blatch. 59.

Mr. Justice Craig delivered the opinion of the Court:

This was an action on the case, brought by William O. Osgood against The Protection Life Insurance Company, to recover a certain sum in damages for the refusal of the company to transfer on its books eighty shares of its capital stock which had been purchased by the plaintiff.

The first question presented by the record is, whether the court erred in rejecting the offered evidence of the defendant, to the effect that when Chesbrough and Williams subscribed to the capital stock of the Protection Life Insurance Company checks were given by the parties for the amount of stock, which the company agreed to hold until the State Treasurer should accept certain notes secured by mortgage, which were given in payment for the stock; and after the Treasurer had passed upon and accepted the securities and filed them as a part of the guaranteed fund, the checks which had in the first place been given were returned; that subsequently the securities were discovered to be of little or no value, and upon notice being given to Williams he gave other securities, which also in the end turned out to be of no value.

If the stock which the company issued to Chesbrough and Williams which was purchased by the plaintiff was absolutely void, it is apparent that an action could not be maintained

against plaintiff in error for a failure to transfer the stock upon
its books. Was the offered evidence sufficient, had it been ad-
mitted by the court, to establish the fact that the stock was
void? We think not. Had the stock been fictitious, or
issued without any consideration whatever, it might have
been regarded as void, and so treated by the company; but
such was not the case. Concede it to be true that Ches-
brough and Williams, when the stock was issued to them,
gave the company their respective checks for the amount of
stock so issued, and that these checks were held under an
arrangement until certain notes secured by mortgage on lands
in Wisner's subdivision in Cook county, which had been de-
livered to plantiff in error, could be passed upon and accepted
by the State Treasurer as a part of the $100,000 required to be
deposited as a basis of commencing business, and that the
checks were returned after the securities were approved, and
that these securities afterwards turned out to be of little or
no value, it by no means follows that the stock was fictitious
or void. If the checks given in the first instance were not to
be regarded as a payment for the stock by the parties, the
notes secured by mortgages which were accepted by the com-
pany as payment, as between the company and Chesbrough
and Williams would constitute a good consideration for the
stock. *Chetlain* v. *The Republic Life Ins. Co.* 86 Ill. 220, is
an authority in point, where it was held that promissory notes
given by a stockholder in an incorporated company for the
payment of the first twenty per cent of his subscription to the
capital stock are founded on a sufficient consideration to sup-
port them.

But it is said the stock was procured from the company by
fraud; that the Auditor of Public Accounts subsequently dis-
covered that the lands mortgaged to secure the notes which
were received for the stock were of little or no value, and the
securities were rejected by the Auditor as not being of the
value required by law. However this may have been, it does
not appear from the offered evidence that Chesbrough and

Williams practiced any fraud upon plaintiff in error. It nowhere appears that they intended to cheat or defraud the company. It does not appear that they, knowing the securities to be valueless, represented them to be good—that they resorted to any means whatever to mislead, deceive or defraud the company.

If the lands embraced in the mortgage were covered by water, and were of no practical value, that fact might have been ascertained by the company by making inquiry where the lands were located, and as no means were resorted to by Chesbrough and Williams to prevent the company from making the investigation, it would seem to have been its duty to do so. But the conduct of Chesbrough and Williams when the securities were rejected by the Auditor is inconsistent with the theory that they had acted in bad faith. As soon as they were called upon for additional security Williams turned out a note for $20,000, the aggregate amount of the subscription, secured by a deed of trust on certain property in the village of Jefferson. This note was executed by one Henry Sloan, and made payable to the president of the company. The note and deed of trust, as well as the other notes and mortgages, have been, and still are, held by the company as security for the stock.

Now, while it may appear, from the offered evidence, that the property embraced in the several mortgages was not valuable, and perhaps was not good security for the payment of the amounts secured thereby, still we perceive nothing in the conduct of Chesbrough and Williams which could be regarded as fraudulent. They seem to have acted with fairness and without the slightest motive to defraud. And had the offered evidence gone to the jury the result could not have been otherwise or different from what it was.

The plaintiff asked no instructions to the jury, and none were given in his behalf; but after the jury had retired to consider of their verdict they made application to the court for further instructions. In response to their inquiry the court

instructed them in writing that the question whether Osgood stands in the place of Williams is not before them, nor is the question whether Osgood is an innocent purchaser; also, that the jury had no right to consider the evidence offered which the court had rejected. The giving of these instructions is relied upon as error.

We perceive nothing wrong in the instructions. If the court was right in the rejection of the offered evidence, the direction to the jury in the instructions would follow as a matter of course. The judgment will be affirmed.

*Judgment affirmed.*