Fletcher *et al. v.* McGill.

No. 11,597.

## FLETCHER ET AL. *v.* McGILL.

SHERIFF'S SALE.—*Inadequacy of Price.— Unfairness.—Surprise or Mistake.— Fraud.—Redemption.*—Although a sheriff's sale will not be set aside for mere inadequacy of price, yet, if the inadequacy be so gross as to shock the conscience, or if, in addition to gross inadequacy, the purchaser has been guilty of any unfairness, or if the owner of the property has for any reason been misled or surprised, the sale will be regarded as fraudulent and the party injured will be permitted to redeem.

SAME.—*Presumption of Fraud.—Purchaser Must Show Good Faith.*—Where there is great inadequacy of price, only slight circumstances of unfairness in the person benefited by the sale are required to raise the presumption of fraud, and it is then incumbent on him to repel such presumption by affirmatively showing that he acted in good faith and took no unfair advantage.

SAME.—*Want of Actual Knowledge of Sale.—Suit to Avoid After Year for Redemption.*—Where, at a sheriff's sale had without the actual knowledge of the execution defendant, his property, consisting of separate parcels, is bid in at a grossly inadequate price and in a manner indicative of unfairness, and the circumstances are such that the purchaser must have known of the owner's want of actual knowledge of the sale, such purchaser can take no advantage by permitting the year for redemption to expire without putting the owner on his guard; and the latter, upon obtaining notice of the sale after the time for redemption, may, if he proceed promptly, sue to avoid it.

SAME.—*Estoppel. — Ratification. — Corporation. — Stock Certificate. — Right to Withhold Payment.*—Where property is sold under a judgment rendered on a promissory note given for the purchase-price of corporation stock, the certificate of which is withheld by the corporation as security for the payment of the debt, the judgment defendant, by demanding and receiving the certificate after notice of the sale, does not thereby affirm the sale and estop himself to question its validity, unless it appears that the certificate had been rightfully retained by the corporation, and that his right to demand its delivery to him depended upon his first having paid the debt.

From the Marion Superior Court.

*F. Rand, J. M. Winters, J. S. Tarkington* and *J. A. Holman,* for appellants.

*J. E. McDonald, J. M. Butler, A. L. Mason, J. M. Cropsey* and *C. M. Cooper,* for appellee.

MITCHELL, J.—This was a suit by McGill against Fletcher & Churchman, to set aside a sale and conveyance of real estate made to the latter by the sheriff of Marion county, upon an execution against the property of the former.

Upon request, the court found the facts specially, and stated conclusions of law thereon. As there are no other questions except such as relate to the propriety of the conclusions of law stated by the court, reference to the pleadings is immaterial.

The material facts found by the court were, in substance, as follows:

On the 8th day of November, 1876, McGill was the owner in fee simple of an undivided one-fifth part of certain tracts and parcels of real estate in the city of Indianapolis. On that date the Chamber of Commerce of Indianapolis recovered a judgment against him in the Marion Superior Court for six hundred and fifty-five dollars and forty-two cents. The judgment authorized the sale of property without relief from valuation or appraisement laws, and drew interest at the rate of ten per cent. per annum.

In December, 1879, the general counsel or attorney of the Chamber of Commerce, without other authority than such as may be implied from the relation which he sustained to the corporation, ordered an *alias* execution upon the above mentioned judgment, which was issued accordingly and placed in the hands of the sheriff of Marion county.

The sheriff levied upon, and on the 24th day of January, 1880, after due advertisement, sold McGill's interest in all of the property described in the complaint. Fletcher & Churchman became the purchasers at such sale.

There were included in the levy and sale two lots—lots one and two of square ninety-one—which were not owned by McGill. At the time of the sale, the latter owned no other property, besides that in controversy, subject to execution, except an interest in the capital stock of the Chamber of Commerce. The value of this interest is not found. Fletcher &

Churchman received a sheriff's deed for the property purchased by them, January 31st, 1881.

Prior to the sale, the attorney who acted for the Chamber of Commerce, in ordering the execution, and the subsequent proceedings thereunder, went to the appellants and solicited them to bid on the property previously advertised, at the sale which was to ensue. They authorized him in their behalf to bid $911.50 for McGill's interest in square ninety, two dollars for his interest in lots six, seven, fourteen, fifteen, thirty and thirty-one, and two dollars for his supposed interest in lots one and two in square ninety-one.

After the rents and profits, and the fee simple of the several tracts had been, so far as appears, regularly offered, the fee simple of the land was offered in the order as above described, and bids were made by the attorney of the execution plaintiff in pursuance of the direction theretofore given by Fletcher & Churchman. The property was struck off to the latter at the bids so made.

At the time of the sale the fair cash value of the property owned by McGill, and sold, was as follows:

| | |
|---|---:|
| Of the undivided one-fifth of square 90 | $5,000 00 |
| Annual rental undivided one-fifth of square 90 | 30 00 |
| Fair cash value of the undivided one-fifth of lot 6 | 175 00 |
| Fair cash value of the undivided one-fifth of lot 7 | 175 00 |
| Fair cash value of the undivided one-fifth of lot 14 | 480 00 |
| Annual rental undivided one-fifth of lot 14 | 40 00 |
| Fair cash value of the undivided one-fifth of lot 15 | 480 00 |
| Annual rental undivided one-fifth of lot 15 | 40 00 |
| Fair cash value of the undivided one-fifth of lot 30 | 200 00 |
| Fair cash value of the undivided one-fifth of lot 31 | 500 00 |
| Annual rental undivided one-fifth of lot 31 | 40 00 |
| The total value of the whole being | $7,160 00 |

McGill had no actual notice of the sale until March, 1881, after the year for redemption had expired, and after the sheriff's deed had been executed. Upon learning of the sale, he offered to redeem, and requested Fletcher & Churchman to inform him how much was due them. They refused, saying

that they had bought the property on speculation. This suit was instituted September 27th, 1881.

In respect to a feature of the case, upon which an alleged estoppel against the appellee is predicated, the following facts were found:

On November 4th, 1874, McGill subscribed for ten shares of the capital stock of the Chamber of Commerce. At the same time, and in consideration of such subscription, he executed his note to the corporation for one thousand dollars. Subsequently he paid upon the note five hundred dollars, and the balance due thereon was the amount for which the judgment above mentioned, in favor of the Chamber of Commerce, was taken.

The Chamber of Commerce withheld the certificate of stock for which subscription had been made, as security for the payment of the sum subscribed.

After the sale of the land, and after the offer to redeem, McGill, on April 14th, 1881, made a written transfer of his stock to James M. Cropsey, to whom, at the appellee's request, the Chamber of Commerce issued a certificate for the stock. This certificate has not been returned or tendered back.

Upon the facts found the court stated as its final conclusion: That the appellee was entitled to have the sheriff's sale and deed set aside, without prejudice to the right of Fletcher & Churchman to be subrogated to the rights of the Chamber of Commerce, and with the right to enforce the lien of the judgment against McGill's interest in the land sold.

The appellants contend that the conclusions of law stated by the court are not supported by the facts found: 1. Because, they argue, that neither fraud nor irregularity in making the sale had been found, and hence the court was not authorized to set aside the sale for mere inadequacy of price, if the price was inadequate. 2. Because the appellee, with knowledge of the sale, assigned and directed the delivery of the certificate of his stock, which had been with-

held by the Chamber of Commerce, as security to James M. Cropsey. In this way, it is argued, he elected to affirm the sale, and is, therefore, estopped to assail its validity. On the other hand, it is earnestly contended that the sale was for a price so grossly inadequate, as in itself to give rise to a presumption of fraud, and that, coupled with the inadequacy of price, is the fact that there were included in the levy, advertisement and sale, two lots which were not owned by the appellee, and the further fact that the circumstances attending the sale, and the arrangements of the bids, together with the relation which the attorney for the Chamber of Commerce occupied in respect to the purchasers at the sheriff's sale, were such as to cast doubt upon the fairness of the sale.

That the price for which the property was sold was grossly inadequate, admits of no discussion. Separate parcels of property, the cash value of which is found to aggregate over seven thousand dollars, have all been swept away to pay a debt of little more than nine hundred dollars. It is somewhat difficult to conceive how at a fair open sale, in a populous city, the sacrifice of so much property should have been necessary in order to pay so small a debt. It is difficult, too, to determine how it could have been thought necessary, or proper, that everything which the debtor owned, and was supposed to own, should have been exposed to sale, and actually sold, when a single separate parcel of the property was abundant to pay the debt five times over. Moreover, that all of the debtor's property subject to execution should have been swept away at such disastrous prices, without actual notice to him until after the year for redemption had expired, adds to the general disfavor in which the transaction stands in a court of conscience.

While it is true, a purchaser at a sheriff's sale is only held to take notice that the forms of law have been observed in making the sale, when an injury so overwhelming is to result, such purchaser must, when the sale is seasonably ques-

tioned, nevertheless himself exclude all traces of design on his part, or of which he was cognizant, to produce the ruin-, ous consequences which have followed to another, who remained in actual ignorance until after the time for redemption had expired.

The use of the mere forms of law to acquire the property of another, with knowledge that the owner is unsuspecting of injury, from want of actual notice, is itself a legal fraud. Sometimes the grossest frauds are perpetrated according to the strictest forms of law.

Now, while it appears from the facts found in this case, that the owner of the property had no knowledge of the sale until after the year for redemption had expired, it does not appear whether or not the purchasers were aware of his ignorance of what had occurred, nor does it affirmatively appear that they did anything to conceal the facts from him. In such a case, the language of Chancellor Desaussure, in the case of *Butler* v. *Haskell,* 4 Des. 651, becomes pertinent. Said the chancellor: " I consider the result of the great body of the cases to be, that wherever the court perceives that a sale of property has been made at a grossly inadequate price, such as would shock a correct mind, this inadequacy furnishes a strong, and in general a conclusive presumption, though there be no direct proof of fraud, that an undue advantage has been taken of the ignorance, the weakness, or the distress and necessity of the vendor: and this imposes on the purchaser a necessity to remove this violent presumption by the clearest evidence of the fairness of his conduct." *Ikerd* v. *Beavers,* 106 Ind. 483, 489.

Looking at the manner in which the bids were pre-arranged, so as to use the comparatively small judgment in order to cover the whole of the appellee's property, consisting of a number of separate parcels, and there appear traces of design on the part of some one, which could scarcely have been conceived, or successfully carried out, except upon the theory that the owner of the property might be, and remain, igno--

rant of the sale. For what reason was it thought necessary, or proper, that nine hundred and eleven dollars should be bid upon square ninety, which then had a cash value of 'five thousand dollars, and that four dollars of the judgment should be left unsatisfied, with which to sweep in all the residue of the debtor's property, part of which was valued at over two thousand dollars? How was it known, when the bids were thus pre-arranged, or what reason was there to suspect in advance of the sale, that the notice of sale, or the activity of the owner of the property, would not bring bidders to the auction, when valuable property was to be sold? And upon what theory could the purchasers have supposed, after their bids had been accepted, that the owner was neglecting his opportunity to redeem from a sale at which property of the cash value of two thousand dollars had been bid in at the nominal sum of two dollars? The only answer which can possibly be suggested is, that they must have suspected that the owner of the property had no knowledge of the sale.

In *Tiernan* v. *Wilson*, 6 Johns. Ch. 411, it was said by the court, that only so much of a defendant's property ought to be sold at one time, on execution, as a sound judgment would dictate to be sufficient to pay the debt, provided that the part selected can be conveniently and reasonably detached from the residue and sold separately. So, in the case of *Wordye* v. *Baily*, Noy, 59, GAWDY, J., said: "If the sheriff, upon a *fi. fa.* for forty shillings, takes five oxen, each of the value of five pounds, and sells them all, the defendant may have an action of trespass against him." *Reed* v. *Carter*, 1 Blackf. 410.

How stands the case here? Square ninety, alone, was worth nearly six times the amount of the entire judgment. The other separate parcels were worth over double the amount of the debt. In what way can it be made compatible with conscience and fair dealing, that separate parcels of property, either of which was worth vastly more than suffi-

cient to pay the entire judgment, should have been so combined, and the bidding so pre-arranged and manipulated, as to take the whole? What motive, except an eagerness that nothing should escape, could have induced the sale of other real estate, at a barely nominal figure, which in the end it turned out the execution defendant did not own? The apparently wanton excessiveness of the sale of separate parcels, when one tract would have been abundant, was in itself an abuse of the process of the court. *Byers* v. *Surget,* 19 How. 303.

Conceding the rule to be, that a sheriff's sale will not be set aside for mere inadequacy of price, yet if the inadequacy be so gross as to shock the conscience, or if, in addition to gross inadequacy, the purchaser has been guilty of any unfairness, or if the owner of the property has for any reason been misled or surprised, the sale will be regarded as fraudulent, and the party injured will be permitted to redeem.

As was said in *Graffam* v. *Burgess,* 117 U. S. 180 (192), " Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud."

Such circumstances appear in this case, and it was therefore incumbent on the appellants to repel the presumption, by affirmatively showing that they acted in good faith, and that they took no advantage of the appellee's actual want of knowledge of the sale. Having bid in the property in the peculiar manner described, and the circumstances being such that they must have known that the owner of the property had no actual notice or knowledge of the sale, they could not " stand by " and permit the year of redemption to run out, without putting the appellee on his guard. *Drinan* v. *Nichols,* 115 Mass. 353; *Montague* v. *Dawes,* 14 Allen, 369; *Kloepping* v. *Stellmacher,* 21 N. J. Eq. 328; *Byers* v. *Surget,* 19 How. 303; *Graffam* v. *Burgess, supra,* and cases cited; *Lashley* v. *Cassell,* 23 Ind. 600; *Benton* v. *Shreeve,* 4 Ind. 66; *Swope* v. *Ardery,* 5 Ind. 213; *Hasselman* v. *Lowe,* 70 Ind. 414, and

cases cited; *Stotsenburg* v. *Same*, 75 Ind. 538; *Jones* v. *Kokomo, etc., Ass'n*, 77 Ind. 340.

In the case of *Kloepping* v. *Stellmacher*, *supra*, where it appeared beyond doubt that legal notice of the sale had been given, the Chancellor, after stating the rule that inadequacy of price itself is not sufficient ground to set aside a conveyance, nor *per se* proof of fraud, employs this language: " But when such gross inadequacy is combined with fraud or mistake, or any other ground of relief, in equity it will incline the court strongly to afford such relief. The sale in this case is a great oppression on the complainants. They are ignorant, stupid, perverse, and poor. They lose by it all their property, and are ill fitted to acquire more. * * * A court of equity will set aside a sheriff's sale, even if there has been no fraud, when there is a gross inadequacy of price, and the parties, by reason of mistake or misapprehension, did not attend the sale, and the sacrifice was caused by such mistake or misapprehension."

So framing bids as to leave a merely nominal amount of the judgment after bidding off square ninety, worth five thousand dollars, to be used in bidding in other valuable parcels, was such an abuse of the process of the court as, coupled with the gross inadequacy of price, justified the court, whose process had been thus employed, in setting aside the sale. Especially is this so, since the order setting aside the sale subrogates the appellants to the rights of the judgment plaintiff, and preserves the lien of the judgment, so that in the end the whole amount of their money invested, with ten per cent. per annum interest, will be realized. This was according to the equity of the case. *Short* v. *Sears*, 93 Ind. 505.

There is no just ground, so far as appears, for any unfavorable criticism of the conduct of the attorney for the Chamber of Commerce. He became the mere messenger to convey the bids which the appellants commissioned him to make. In this he assumed no inconsistent attitude to his principal.

It remains to be determined whether the appellee, by reason of his having assigned and directed the delivery of his stock certificate after knowledge of the sale, has thereby affirmed the transaction, and estopped himself from assailing the appellants' purchase and deed.

No principle in the law is more thoroughly settled, than that an invalid, or even void, sale may be ratified, either directly, or by a course of conduct which estops the party from denying its validity.

If a party whose property has been sold claims and receives the surplus proceeds of the sale, with a full knowledge of the facts constituting the transaction, his act must thereafter be treated as an irrevocable confirmation of the sale. As was said in *Rowe* v. *Major*, 92 Ind. 206, quoting from *Maple* v. *Kussart*, 53 Pa. St. 348, "It is a maxim of common honesty, as well as of law, that a party can not have the price of land sold, and the land itself. Accordingly, it has been ruled uniformly, that if one receive the purchase-money of land sold he affirms the sale, and he can not claim against it whether it was void or only voidable." *State* v. *Stanley*, 14 Ind. 409; *McConnell* v. *People*, 71 Ill. 481; Bigelow Estop., p. 662; Herman Estop., sections 1059–1069.

Did the fact that the appellee demanded and received the stock, which was held as security by the Chamber of Commerce for the payment of his debt, bring the case within the principle stated?

An estoppel is not created unless the acts or declarations constituting the estoppel are plainly inconsistent with the rights which they are alleged to have barred, and were made with full knowledge of the existence of the inconsistent right. *Lee* v. *Templeton*, 73 Ind. 315.

"Every estoppel," says Lord Coke, "because it concludeth a man to allege the truth, must be certain to every intent, and not be taken by argument or inference." Coke Litt. 352*b*.

The stock was in no sense part of the proceeds of the sale of the appellee's property. The sale produced no surplus,

over and above the amount of the judgment. The most that can be claimed is, that the sale resulted in satisfying the debt due the Chamber of Commerce, and operated to release the stock from pledge, as security for the debt. Hence the argument is, that by accepting the stock, McGill gave countenance to the sale by treating it as having paid his debt. This position rests upon the assumption that the Chamber of Commerce held the stock by virtue of some legal right or contract, and that the appellee's right to demand the delivery of his stock depended upon his first having paid the debt.

The only fact found by the court in that connection is, that the " Chamber of Commerce withheld the certificate of stock as security for said subscription, until after satisfaction of its judgment by the sale hereinbefore mentioned."

The Chamber of Commerce may or may not have had the right to withhold the stock. " It has sometimes been supposed," says a modern author, " that a shareholder is not entitled to receive a certificate for his shares until the latter had been fully paid up; but this appears to be a mistake." 1 Morawetz Corp., section 472. It was competent for the corporation to make such rules and regulations in respect to the issuance of its stock certificates, as it saw fit. What its regulations were in that regard, is not disclosed by the special findings. In order to justify the assumption that the stock was rightfully withheld after the subscription had been made, and a note given, and one-half the subscription price paid, we should be obliged to infer either that the regulations of the corporation provided for the withholding of the certificates until the subscriptions were fully paid in cash, or that the stock was withheld in pursuance of a contract with the appellee. This would be to violate the rule that an estoppel can not be created by inference or argument.

It was competent for the corporation to have taken the appellee's note in payment of the stock, unless its rules and regulations provided to the contrary. *Union, etc., Ins. Co.*

v. *Curtis,* 35 Ohio St. 343; *Gould* v. *Town of Oneonta,* 71 N. Y. 298; *Protection L. Ins. Co.* v. *Osgood,* 93 Ill. 69.

That corporate shares need not be paid for in cash, is established by a long line of decisions, both English and American. Unless prohibited by statute, and in the absence of fraud, the courts will treat that as payment which the parties agreed should be payment. *Phelan* v. *Hazard,* 5 Dill. 45; 18 Am. Law. Rev. 256.

For aught that appears in the special finding, the appellee may have demanded and received his stock on the ground that the Chamber of Commerce had no right from the beginning to hold it as security. He may have insisted that his note was taken in payment, or that, having paid part, he was entitled under the regulations to a certificate. In that event his demand of the stock would have been no recognition of the validity of the sale. Since, therefore, certainty is an essential element of all estoppels, it can not be said that the mere fact that the stock was demanded and received, was an affirmation of the validity of the sale. The demand of the stock was not of itself necessarily inconsistent with the assertion that the sheriff's sale was invalid.

Lastly, it is argued that a voidable sale will not be set aside, unless proceedings to that end are commenced within the period allowed by law for redemption.

Undoubtedly that is true, unless some good reason is shown for not commencing proceedings within the year. Ordinarily, where an execution sale takes place, a redemption can be effected as a matter of right, within a year, without proceedings to that end, other than to pay or tender the amount required. Where, however, the party entitled to redeem remains in ignorance that his property has been sold, until after the period for redemption has expired, and the circumstances under which the sale was made are such that for the purchaser to stand by and permit him to remain in ignorance is to take an unfair advantage of the owner, such person is not guilty of *laches* if he proceed promptly after

obtaining notice of the sale.   Prompt action seems to have been taken in this case.   .

Upon the whole case, our conclusion is that the judgment of the Marion Superior Court must be affirmed.

Judgment affirmed, with costs.

HOWK, J., does not concur in this opinion.

ELLIOTT, J., did not participate in the consideration of this case.

Filed March 8, 1887.

## ON PETITION FOR A REHEARING.

MITCHELL, J.—Upon a careful consideration of the elaborate argument presented by appellants in support of their petition for a rehearing, we are constrained, nevertheless, to adhere to the general conclusion at which we arrived at the hearing of this cause.

We did not overlook the fact that the appellants in their original brief admitted that the bids made upon some of the parcels of land were merely nominal, and that they consented that as to such parcels the sale might be set aside.   Notwithstanding this, we recognized the privilege of the appellee to insist—as he did—that the bidding in and accepting of a conveyance of other valuable parcels, at merely nominal prices, when the parcel first bid in was worth, in cash, nearly six times the amount of the debt, evinced such a design needlessly to sacrifice the appellee's property, as infected the whole transaction.   The price paid for each parcel was grossly inadequate.   It can not be admitted in such a case, that as to those parcels in respect to which the disparity between the value of the property and the amount bid is the greatest, so great, indeed, that to permit the sale to stand would cast reproach upon the law, the purchaser, by consenting that as to them the sale may be set aside, may rescue the purchase as to other parcels in respect to which the price is also grossly inadequate.   The whole transaction takes color from the general purpose and design which appears in each separate part.

The circumstance that some of the property thus bid in, at a nominal figure, was not at the time owned by the appellee, furnishes no mitigation when the whole transaction is considered. All that can be said in respect to those parcels is, the design of the bidder miscarried, because he did not calculate correctly as to the title. His purpose to obtain all the execution defendant's property at a merely nominal outlay is not the less apparent.

The suggestion is made that the lien of the judgment to which the appellants have been subrogated has expired, and that hence the decree should be modified so as to require the appellee to redeem within a time to be fixed by the court.

Upon consideration of this suggestion, it is now ordered that the decree of the Marion Superior Court be so modified as to require the appellee within ninety days from this date, to pay the amount due on the judgment upon which the sale was made, together with the interest and costs, including the costs of the sale.

The petition for a rehearing is overruled, with costs.

Filed April 27, 1887.