Stuart *et al. v.* Brown *et al.*

No. 16,233.

## STUART ET AL. *v.* BROWN ET AL.

SHERIFF'S SALE.—*Action to Set Aside.—Fraud.—Equitable Lien.—Burden of Proof.—Estoppel.—Contract.*—A., at the time of his death, owned a certain tract of land, which he devised to B. and C. for life, and the remainder, in fee, to their children, providing that upon failure of B. and C. to pay the taxes thereon, his executor should take charge and possession of said land and apply the rents to the payment of such taxes. After the death of A., B. and C. failed to pay the taxes assessed against said land, and the land was sold for taxes to D., and, the land not being redeemed, D. received a tax deed therefor. B. and C. procured E. to purchase D.'s interest in the land, under a verbal agreement that E. should purchase the tax title, and foreclose, by due procedure, the lien given to purchasers at void tax sales, and that the premises should then be sold by the order of E., at sheriff's sale, to satisfy the decree, and that E. should purchase, at such sale, the property, and hold the same for the use and benefit of B. and C. until the rents thereof should pay E. for the tax lien and costs of foreclosure, with interest, then E. should convey the same to B. and C., or to their children. E., in compliance with his agreement, purchased the tax title of D., foreclosed the lien, and had the land sold; but instead of purchasing at the sale, according to agreement with B. and C., he permitted F. to purchase, who was a tenant of the land, upon the understanding that F. should purchase as the agent of E., and that the sheriff's deed therefor should be made to E., and that E. should protect F.'s lease interest in the land, which agreement between F. and E. was made to prevent competition at the sale. F. purchased the rents and profits for a period of seven years for $455.82, and repudiated the agreement with E., and claimed the rents and profits for the seven years, the rents and profits for such period being fairly worth $1,500. B. and C. seek to have the sale to F. set aside.

*Held,* that F. is estopped from claiming the benefits of his purchase, and that B. and C. were not guilty of fraud leading to the result complained of, and that the sale should be set aside.

*Held,* also, that F. is entitled to an equitable lien on the land for the purchase price of the rental paid by him.

*Held,* also, that F. is bound by his contract with E. to the same extent that E. would have been bound had he purchased at the sale.

*Held,* also, that the burden is not on B. and C. to show that any person would have bid more for the land than F.; neither is a failure of the finding to show such fact equivalent to a finding that no per-

son would have bid more; and since the purpose of F. was to prevent competition, he can not be heard to say that his purpose was not effectual.

From the Fountain Circuit Court.

*H. H. Dochterman* and *D. W. Simms*, for appellants.
*C. M. McCabe* and *J. Bingham*, for appellees.

DAILEY, J.—This was an action by the appellees, against the appellant Zachariah Stuart, who was the purchaser of the rents and profits of certain real estate, at sheriff's sale, and the other persons named as appellants, who were judgment defendants in the judgment and decree, to set aside such sale.

The appellant Stewart demurred to each paragraph of complaint.

The court sustained the demurrer as to the second, and overruled the same as to the first paragraph of the complaint, to which Stuart excepted. Stuart answered the remaining paragraph of the complaint by a plea in denial, with request that if the sale be set aside he be subrogated to the rights of plaintiffs. The cause was submitted to the court for trial, and at the request of said Stuart the court made a special finding of facts and stated conclusions of law thereon. There were two conclusions of law, and the appellant Stewart excepted to each.

These conclusions were such that a judgment was entered setting aside said sheriff's sale and subrogating appellant Stewart to the rights of the judgment plaintiff in the judgment and decree on which the sale was made. From the judgment, said Stewart has appealed to this court, and made his codefendants coappellants, and caused notice of the appeal to be served upon them and the appellees.

The appellant Stuart has assigned as errors against him the following:

1st. That the court erred in overruling the demurrer of said Stuart to the first paragraph of the complaint.

2d. That the court erred as against Stuart in its first conclusion of law.

3d. That the court erred as against said Stuart in its second conclusion of law.

The appellant Stuart declines to discuss the first assignment of error, challenging the sufficiency of the complaint. We therefore proceed to the consideration of the questions in the case arising on the second and third assignments of error.

These assignments of error call in question the conclusions of law. If the first conclusion of law was wrong, so was the second, and so we may consider the assignments of error together. The first conclusion of law was "That the plaintiffs are entitled to have the sheriff's deed and sale set aside."

Whether the conclusion of law is correct, depends on the findings of fact on which it is based.

The findings of fact are as follows:

1st. The court finds that the premises mentioned and described in the complaint were owned by Simon Brown at the time of his death.

2d. That Simon Brown, by his last will, devised said premises, for life, to the plaintiffs, with remainder in fee to their children, and, by his will, specially charged the plaintiffs with the taxes assessed against the same, and provided that on the failure of the plaintiffs to pay said taxes, his executor should take charge and possession of said lands, or so much thereof as should be necessary for the purpose, and apply the rents to the payment of such taxes, and that Simon Brown died on the 6th day of May, 1874.

3d. The court further finds that after the death of Simon Brown, the plaintiffs failed and neglected to pay the taxes charged and assessed against said lands, and that said premises were sold by the county treasurer for the taxes charged and assessed against said land for the years, to one Sampson Reed, and that no one redeeming said land from said tax sale the auditor of said Fountain county executed to said Reed a tax deed therefor.

4th. The court further finds that afterwards the plaintiff Esau Brown procured one J. Mahlon Coffing to purchase the interest of Sampson Reed in said premises, under a verbal agreement that said Coffing should purchase said tax title and foreclose, by due procedure in court, the lien given by statute on the premises to purchasers of lands at void tax sales, and that said premises should then be, by order of said Coffing, sold at sheriff's sale to pay said decree, and that at said sale Coffing should buy in said property and hold the same for the use and benefit of said plaintiffs until the rents thereof should repay said Coffing the amount by him advanced to pay said tax lien and the costs of said foreclosure suit, with interest thereon, and also pay to said Coffing a debt owing by the plaintiff Esau Brown to said Coffing, and should thereupon convey said premises to said plaintiffs or their children.

5th. The court further finds that under and pursuant to said agreement, the said Coffing did purchase, from said Reed, his interest in said premises under said tax deed, and that said Coffing did, on the 8th day of March, 1890, procure a decree from the Fountain Circuit Court foreclosing said tax lien upon said premises, for the sum against the plaintiffs and the defendants, other than Zachariah Stuart; that said Coffing procured a decretal order to issue, by the clerk of said court, directing the sheriff of said county to sell said premises to pay and

satisfy said lien, and that, on the 7th day of June, 1890, the said sheriff of said county sold the rents and profits of said premises, for a term of seven years, to the defendant Zachariah Stuart, for the sum of $455.82, the principal, interest and costs due on said decree, which sum said Stuart paid in cash, and said Coffing, the plaintiff in said decree, received said sum from the sheriff, and receipted said officer therefor upon said writ.

6th. The court further finds that the rents, issues and profits of said premises for the term of seven years were, at the time of said sale, fairly worth $1,500.

7th. The court further finds that said premises consisted of a farm of one hundred and forty acres, and that at the time said decree was so rendered as aforesaid, the defendant Zachariah Stuart had leased sixty acres of the same from the plaintiffs, for a period of five years, for the annual rental of $225, for which sum he had executed his notes, payable, as said rent became due, to the plaintiffs, two of which notes had, prior to said sheriff's sale, been assigned by the plaintiffs, under such circumstances as to preclude the defendant from making any defense thereto, and that a third note was, by the plaintiffs, with the consent of said Stuart, assigned to J. Mahlon Coffing, who had, at the time, full notice of the consideration for said note as security for the payment of a debt from Emma Brown to said Coffing, and that said defendant Stuart was not a party to said proceeding to foreclose said tax lien, nor was his lease, though in writing, of record in the recorder's office of said county.

8th. The court further finds that it was a part of the agreement of said Coffing and the plaintiffs that he, the said Coffing, would protect the rights and interests of said Stuart under his lease.

9th. The court further finds that the plaintiffs had a

large family of children, some of whom were born prior to the death of Simon Brown, and some subsequent to the death of Simon Brown, and that plaintiffs conceived the idea that all of their said children born subsequent to the death of Simon Brown would be excluded from any share in said lands upon the death of the plaintiffs, and that their object and purpose in entering into the agreement heretofore set out, with said Coffing, was to procure the title to said lands to be so fixed that upon the death of the plaintiffs their children would all share alike in the same.

10th. The court finds that neither of the plaintiffs attended said sale, but relied upon said Coffing to bid off said property for them at the same.

11th. The court further finds, that on the day fixed by the sheriff for the sale of said premises, the executor of the will of Simon Brown appeared at said sale and proposed to bid off the rents and profits of said lands for a sum sufficient to satisfy said sum, rather than have the fee in said lands sold; that the defendant Stuart appeared as a bidder, and said Coffing also appeared, and that for the purpose of avoiding competition from said Coffing, as a bidder at said sale, the defendant Stuart agreed with said Coffing to bid off the property sold in his, Stuart's, name, but really for said Coffing, and that said Coffing should receive the sheriff's deed for said premises, in his own name, but should protect the interests of Stuart under his lease.

12th. The court further finds that, relying upon the promises of said defendant Stuart, said Coffing did refrain from bidding on said property when so offered by said sheriff for sale, and that the same was struck off and sold to said Stuart, without competition, for the sum of $455.82, and that afterwards said Stuart refused to com-

ply with his said contract and agreement with said Coffing.

13th. The court further finds that at the time said Stuart bid off the premises, as aforesaid, and at the time of making the agreement with said Coffing to purchase said lands for him, the said Coffing, said Stuart had full notice and knowledge of the agreement between the plaintiffs and said Coffing with respect to said lands.

14th. The court further finds that the attorney for the plaintiffs was present at the sale, and was fully cognizant of the agreement between Coffing and Stuart in refer-ence to bidding off the property at the sheriff's sale.

15th. The court further finds that said sale fully paid and satisfied said decree, and that the sheriff executed a deed of lease to said defendant conveying to him said premises for the term of seven years.

Counsel for appellants, in criticising the conclusions of law, assume, from the facts found, that the appellees were engaged, with one Coffing, in a fraudulent scheme to secure the fee-simple of the real estate in controversy, in their own names, and thereby defeat the estate of the remainder-men therein, and that having procured a sale of the property under such circumstances, they are not in a condition to be heard in a court of equity; that such court does not aid them, but leaves them where it finds them.

The principle in equity which counsel seek to invoke is axiomatic, viz., that one who asks relief in a court of equity must come in with clean hands. The basis of appellant's argument is that there was an arrangement by appellees and others to prevent competition among bidders. If the premise is correct his conclusion would necessarily follow.

The finding shows that, for the purpose of avoiding competition from said Coffing as a bidder at the sale, the

defendant (appellant) Stuart agreed with said Coffing to bid off the property sold in appellant's name, but really for said Coffing, and that the latter should receive the sheriff's deed for said premises in his own name, but should protect the interest of Stuart under his lease. It is not found that Coffing entered into this agreement with Stuart with the intent of avoiding competition from him.

It may be assumed that it was his design, if he had any, to protect Stuart in his rights as lessee of the real estate. But if we could indulge in the strained construction that Coffing entered into an arrangement with appellant to suppress competition, it could not bind appellees, who were not present at the sale and whose agreement with him contemplated nothing of the kind. The act would not be within the scope of Coffing's authority. If Stuart had induced Coffing to enter into a combination to suppress competition, knowing as he did the relation Coffing occupied to appellees and the extent of his authority, it would violate the well known maxim "no one will be allowed to take advantage of his own wrong." Appellant is bound by the contract he made with Coffing to the same extent that the latter would have been bound had he purchased at the sale.

Stuart, by his agreement and purchase, was the agent of Coffing and the trustee *ex maleficio* of the appellees.

"A person agreeing verbally to bid in land for another at sheriff's sale, will be decreed to hold in trust, though he takes the title in his own name, and pleads the statute of frauds in bar.   *   *   *   If one purchase property at a sale on execution, at the request of the execution debtor,   *   *   whereby the debtor is induced to relax his exertions to satisfy the execution, the agreement will be enforced. A court of equity will not permit the statute of frauds to be set up as a defense by a party in-

fected with fraud; and parol trusts of real estate are fre-
quently established in direct contravention of the statute,
upon the principle that instruments which would have
been executed, or would have existed, but for fraud, are to
be treated as if actually executed and existing. Where a
grantee agrees to give a defeasance, and after he has got
the deed evades doing it, chancery will relieve against
the fraud, and enforce the agreement. A court of chan-
cery relieves against fraud by converting the person guilty
of it into a trustee for those injured thereby.'' *Arnold
v. Cord*, 16 Ind. 177; *Brown* v. *Lynch*, 1 Paige Ch.
Rep. *147; *Grumley* v. *Webb*, 100 Am. Dec. 304; *Beegle* v.
*Wentz*, 93 Am. Dec. 762; *Ryan* v. *Dox*, 90 Am. Dec. 696;
*Combs* v. *Little*, 40 Am. Dec. 207; *Martin* v. *Blight Heirs*,
4 J. J. Marshall (Ky.) *491.

In the last named case, the purchase of certain lands,
at sheriff's sale, was made by one Martin. Prior to the
sale one Southard became the agent of Blight, the owner
of the lands, to attend the sale and buy it in for him.
An arrangement was subsequently made between South-
ard and Martin by which Martin agreed to act for South-
ard, as an agent, and buy in the land for him. On the
day of the sale Martin bought in the property and re-
pudiated the agreement.

The court, in affirming the decree of the lower court
setting aside the sale, says: "If he (Martin) had not
made the agreement with Southard, and thereby pre-
vented him from attending the sale, the land might have
sold at a much higher rate. If he had, in good faith,
fulfilled his engagement, he would have purchased for
Southard and in that event, if Southard was the agent
for Blight, in getting Martin to attend the sale, and buying
the land, and had, by promising Blight to attend the
sale through Martin, prevented Blight from attending,
as is charged,   *   *   the purchase of Martin would have

Stuart *et al. v.* Brown *et al.*

been for the benefit of Blight. * * * Whether he was acting as agent directly of Blight, or as his agent being employed by Southard, is not a matter of any importance. If, in either capacity, he violated the trust and confidence reposed in him, and thereby prevented Blight, or his agent, from attending in person, or procuring another to attend to the sale * for * him, such a breach of trust, operating to the prejudice of Blight, is sufficient to justify the vacation of Martin's purchase."

Appellant is right in his contention that fraud without injury is not available as a cause of action. A fraud or loss without injury is one for which no recompense can be had, but we gravely doubt its application in this case. Counsel, in discussing this proposition, found their argument upon the premise that the finding fails to show that any person would have bid more for the land than Stuart bid, and insist that the burden rested on appellees to show that fact, and that the failure of the finding to show such fact is equivalent to a finding that no person would have bid more.

We think this too broad an assertion, where the findings show a breach of confidence involving moral turpitude on the part of the person who insists upon it, by which a trusted agent is induced to substitute him in that agency and thus prevent competition from such agent and secure title in himself. The findings show this to have been his purpose, and he can not now say that the deceit was not effectuated.

The findings show that Coffing was there as a bidder, to buy in the land, to hold as security until he should be repaid out of the rents of the premises. This he had agreed to do, but was prevented by the conduct of the appellant. Whether he would have bid more than Stuart or not can not be known. The nearest proof possi-

ble is that of intention, which would be controlled largely by the action of other bidders.

We will waste little time in discussing the question as to whether or not a real injury resulted from appellant's conduct. If there be none, then appellees are in as good condition as if appellant had been faithful to his contract. Had he adhered to his contract, he would have permitted Coffing, as appellee's agent, to take the sheriff's deed in his own name, which, by the force of the agreement with appellees, would have been in trust, subject to appellant's lease, as a mere security until the rents satisfied the indebtedness due him.

Instead of this, appellant is now claiming, in his own right, by virtue of his fraudulent purchase, the 140 acre lease, for the period of seven years, fairly worth $1,500, when sold, for which he paid but $455.82. Would not such undue advantage, if upheld, result in injury?

The case of *Gilbert* v. *Carter*, 10 Ind. 16, is not analogous. In that case it did not appear that the property sold for less than its real value, nor was there a contract or understanding shown between the purchaser and the execution defendant, either mediately or immediately relative to the purchase.

The suggestion, by appellant, that the *onus* rests upon the owner whose land has been sacrificed at judicial sale, to show that any person would have bid more than the purchaser, if the latter had not falsely represented that he was bidding for the use of the execution defendant, and his family, is in conflict with many decisions of this court. *Bunts* v. *Cole*, 7 Blackf. 265; *Plaster* v. *Burger*, 5 Ind. 232; *Vantrees* v. *Hyatt*, 5 Ind. 487; *Forelander* v. *Hicks, Admr.*, 6 Ind. 448; *Seller* v. *Lingerman*, 24 Ind. 264; *Lynch* v. *Reese*, 97 Ind. 360; *Wright* v. *Dick*, 116 Ind. 538; *Fletcher* v. *McGill*, 110 Ind. 395; *Ikerd* v. *Beavers*, 106 Ind. 483; *Arnold* v. *Cord, supra; Tracy*

v. *Kelley*, 52 Ind. 535; *Catalani* v. *Catalani*, 124 Ind. 54; *Scheffermeyer* v. *Schaper*, 97 Ind. 70; Freeman on Executions, section 337, par. 297; Freeman Void Jud. Sales, par. 40; Tiedeman on Sales, section 169.

In *Grumley* v. *Webb, supra*, it is said: "Had there been no agency under the facts in this case, the defendant would still have been placed in the position of a trustee. He obtained the property at a sacrifice, by representing that he was buying for his principal; and no principle is clearer than that where one becomes a purchaser under such circumstances as would make it a fraud to permit him to hold onto his bargain,—as by representing that he is buying for the benefit of the embarrassed debtor in the execution, or that he intended to reconvey the property, and thereby obtains it at a sacrifice,—the courts will relieve against such fraud, and the person who has gained an advantage by means of such fraudulent act will be converted into a trustee for those who have been injured thereby."

In *Kinard* v. *Hiers*, 55 Am. Dec. 643, it is held that "when purchases are made by one representing himself to be acting under an agreement with the judgment debtor, and for the latter's benefit, when in fact there was no agreement, the advantages thus obtained will be taken from him, on the ground of fraud.

"In support of this doctrine the court cite and quote *McDonald* v. *May*, 1 Rich Eq. (S. C.) 95, as follows: 'The statute of frauds, it appears to me, has no application here. This branch of the case does not proceed upon the contract—does not look to an execution of the contract, but founds the remedy upon a fraud, by the practice of which the purchaser obtained possession of the plaintiff's property. Can it admit of doubt that, if a bidder at a sheriff's sale, either of real or personal property, represents that he has contracted to purchase

in the property for the debtor's benefit, when in fact
there never was such a contract, and in consequence be-
comes the purchaser, he shall not be allowed to retain the
advantage he has thus unjustly obtained?     It seems to
follow, that all purchases by May himself must be
deemed liable to a trust in his hands.     For although it
appears that no proof can be made that his representa-
tions drove off any particular competitor, and it is proved
that the majority persisted in bidding, and made the
property bring a pretty full price, proof of an actual in-
jury is not necessary when actual fraud is established."

   In *Turner* v. *King*, 2 Iredell's Eq. 132, it is said:
"On this agreement (to purchase the lands and let the
owner redeem), being made known to the people attend-
ing the sale, two persons desisted from bidding for the
land, and the defendant was permitted to purchase lands
worth $450, for the small sum of $199.20.     *     *     *
The attempt in the defendant to set up an irredeemable
title, after the agreement he entered into, is such a fraud
as the court will relieve against."

   In *Ryan* v. *Dox, supra,* it is held that "If one makes
a parol agreement to buy at a foreclosure sale for the
mortgagor, and prevents others from bidding by de-
claring such to be his purpose, and thus acquires the title
at a price greatly below its value, and he afterwards at-
tempts to claim the property for his own benefit after
leaving the mortgagor in possession for several years,
the law makes him a trustee *ex maleficio,* and equity,
notwithstanding the statute of frauds, will treat him as
a trustee for the owner, and on tender to him of the
purchase money and interest, he will be compelled to
convey the property to the party equitably entitled to
it."

   In *Combs* v. *Little*, 3 Green's Ch. 310, 40 Am. Dec.
207, it is held that a "right of redemption of land sold

under an execution exists where the land is sold at a low figure, and others do not bid because it was understood that the purchaser was buying it for the execution debtor.''

In *Mills* v. *Rogers*, 13 Am. Dec. 203, it is held that ''where the plaintiff in an execution prevents others from bidding at the sale, by promises that he will sell certain tracts to them at a low price, and thereby purchases in the land for much less than its value, the sale will be set aside on motion.''

In *Farr* v. *Sims*, Rich. Eq. Cases (S. C.), 122, it is held that any act of preventing competition among bidders, at an auction, on the part of the auctioneer, or persons causing the sale, vitiates the sale.

In *Foulk* v. *McFarlane*, 1 W. & S. 297, it is said: ''The fraudulent vendee gains no title to the land by the sale, nor interest in it, notwithstanding an innocent creditor may, by that very sale, obtain a good title to the money. It shall be a good sale as to the creditor, to entitle him to receive the money, and yet no sale as to the fraudulent vendee, to enable him to shelter the land against pursuit. Nor would the policy of the law, which abhors fraud, be promoted by permitting such defense to the purchaser. All the avenues that facilitate the detection and overthrow of fraud, should be kept open and free from * * bars and estoppels.''

In *Fletcher* v. *McGill, supra,* at page 400, the court said: ''Now, while it appears from the facts found in this case, that the owner of the property had no knowledge of the sale until after the year for redemption had expired, it does not appear whether or not the purchasers were aware of his ignorance * nor does it affirmatively appear that they did anything to conceal the facts from him.'' And, on page 402, the court further said: ''Conceding the rule to be, that a sheriff's sale will not be set

aside for mere inadequacy of price, yet if the inadequacy
be so gross as to shock the conscience, or if, in addition
to the gross inadequacy, the purchaser has been guilty of
any unfairness, or if the owner of the property has, for
any reason been misled or surprised, the sale will be
regarded as fraudulent, and the party injured will be per-
mitted to redeem.  *  *  *  Great inadequacy requires only
slight circumstances of unfairness in the conduct of the
party benefited   *   *   to raise the presumption of
fraud.   *   *   *   Such circumstances appear in this
case, and it was therefore incumbent on the appellants
to repel the presumption, by affirmatively showing that
they acted in good faith, and that they took no advan-
tage of the appellee's actual want of knowledge of the
sale.''

In *Wright* v. *Dick, supra,* on page 544, the court said:
''A sale, such as the one under consideration, being of
an amount of property so grossly excessive as to raise a
presumption of unfairness and oppression, is presump-
tively fraudulent, and the law imposes upon the purchaser
the burden of showing that he took no advantage,'' etc.

Applying these principles to the case under consider-
ation, we are forced to the conclusion that the appellant
Stuart is estopped from claiming the benefits of his
purchase, and that appellees were guilty of no fraud lead-
ing to the result complained of.

As shown by the findings, the testator, by his will,
charged appellees, who were life tenants of the land, with
the payment of the general taxes, which was also their
duty in the absence of a provision of the will, and also
provided that in case of their failure to pay, the executor
should take charge and possession of the premises, or so
much thereof as should be necessary for the purpose, and
apply the rents to the payment of such taxes. The tes-
tator seems to have foreseen the event of the failure to

keep the taxes paid, but it does not appear whether it was anticipated from the weakness and improvidence of the life tenants or from the large family dependent on them for support.

The agreement between appellees and Coffing, as shown by the finding, was in line with the provisions of the will, effectuating its intent and purpose, making the rents of the farm discharge the tax lien, thereby saving the rights of the remainder-men.

There is no finding that appellees owned any property other than the life-estate devised them by their father. Had they possessed anything else, it is fair to infer that the officers would have discharged their duty by causing it to be sold for the taxes instead of the land. They were impecunious and in debt; their necessities were such that they were compelled to secure their neighbor, by permitting him to hold their title and lands until their liabilities were paid in rental therefrom. The tax sale they sought to vacate would have exhausted the fee of the lands, if allowed to stand; they had no estate to leave their children, save what the grandfather left them, and it could be reclaimed only by a foreclosure proceeding conducted by a friend. Natural love and affection, free from covin and fraud, should dictate the course pursued, for the purpose intended.

Appellees' conduct is susceptible of a construction in favor of honesty and fair dealing in this transaction, and we will not deprive them of its benefits where the facts indicate that an undue advantage has been taken either of their ignorance and weakness or distress and necessities, by which, if the judgment should be reversed, they would sacrifice $1,500 in rentals for $455.82.

Appellant and appellees seem to concur in the notion that the court erred in its second conclusion of law.

Appellant paid the purchase price of the rental, and

is entitled to the equitable lien of a vendee.    *Stults* v. *Brown, Admr.*, 112 Ind. 370.

The judgment is affirmed, with costs.

